WYANDOTTE SAVINGS BANK *v.* STATE BANKING
COMMISSIONER.

1. BANKS AND BANKING—STATE BANKING DEPARTMENT—COMMIS-
SIONER—JURISDICTION.

The State banking department is vested with jurisdiction over
banks transacting business under State laws and the powers,
duties, management and control of that department are vested
in the State banking commissioner (CL 1948, § 487.1 *et seq.*).

2. STATUTES—CONSTRUCTION OF WORDS AND PHRASES.

Words and phrases in a statute must be construed according to
the common. and approved usage of the language; technical
words and phrases and such as may have acquired a peculiar
and appropriate meaning in the law are to be construed and
understood according to such peculiar and appropriate mean-
ing (CLS 1954, § 8.3).

3. SAME—CONSTRUCTION WHEN WORDS ARE NOT EXPLICIT.

Words in a statute that are not explicit are construed in the light
cast by the obvious purpose of the statute and the mischief
sought to be remedied.

4. WORDS AND PHRASES—VILLAGE.

The word "village" is not a technical word or one having a pe-
culiar meaning, but is a common word in general usage with
an ancient lineage.

5. SAME—DEFINITION OF. VILLAGE.

A village, in the common acceptation of that term, is an assem-
blage or community of people, a nucleus or cluster for residen-

REFERENCES FOR POINTS IN HEADNOTES

[1, 15]  7 Am Jur, Banks § 9 *et seq.*
[2]  50 Am Jur, Statutes §§ 238, 277, 278.
[3]  50 Am Jur, Statutes § 303 *et seq.*
[5]  37 Am Jur, Municipal Corporations § 5.
[8, 9]  50 Am Jur, Statutes § 358.
[10]  7 Am Jur, Banks § 23 *et seq.*
[12]  11 Am Jur, Constitutional Law § 238 *et seq.*
[16]  50 Am Jur, Statutes § 319.

tial and business purposes. a collective body of inhabitants, gathered together in one group.

6. MUNICIPAL CORPORATIONS—UNINCORPORATED VILLAGES.

Unincorporated villages are not legal entities.

7. BANKS AND BANKING—BRANCH BANKS—UNINCORPORATED COMMUNITY.

The lack of formal incorporation as a city or village need not deprive a community of 18,000 people of the convenience of a branch bank under a statute authorizing the establishment of "branches within a village or city" (CL 1948, § 487.34).

8. STATUTES—CONSTRUCTION—INTENT.

The Supreme Court does not confine its attention solely to one specific clause of an act when arriving at the legislative intent of the act.

9. SAME—CONSTRUCTION—EVERY CLAUSE AND WORD PRESUMED TO HAVE MEANING.

It is a cardinal rule of statutory construction that full effect shall be given to every part of an act under consideration as every clause and every word is presumed to have some force and meaning.

10. BANKS AND BANKING—BRANCH BANKS—UNINCORPORATED VILLAGES.

The financial institutions act permits the establishment of branch banks in unincorporated villages (CL 1948, § 487.34).

11. SAME—BRANCH BANKS—DISCRETION OF COMMISSIONER.

The discretion of the State banking commissioner in making a determination as to the necessity for a branch bank in a community is measured by the substantial or obvious need in view of the disclosed circumstances (CL 1948, § 487.34).

12. CONSTITUTIONAL LAW—POLICE POWER—OFFICERS—DELEGATED POWER.

The power to carry out a legislative policy enacted into law under the police power may be delegated to administrative officials under quite general language, so long as the exact policy is clearly made apparent and the officials by action may carry out the power declared and delegated, but cannot assume to be vested with power beyond expressed legislative delegation nor exercise any discretion at all of a legislative nature.

13. BANKS AND BANKING—BRANCH BANKS—DISCRETION OF COMMISSIONER—UNINCORPORATED COMMUNITY.

The State banking commissioner did not abuse the discretion

vested in him in permitting the establishment of a branch bank near the center of an unincorporated community of over 5,000 homes, 18,000 persons, otherwise served by 6 elementary schools, several churches, supermarkets, drugstores, motels and gasoline stations, building permits during a preceding 6 months contemplated an expenditure of $3,695,000 of which approximately 2/3 was for new residences and assessed value of property was more than $22,000,000 (CL 1948, § 487.34):

14. SAME—VILLAGE—NAME—QUESTION FOR TRIER OF FACTS.

The action of the township board in giving a name to an unincorporated community in which the State banking commissioner authorized the establishment of a branch bank is not determinative of whether or not there is an existing village as the existence of a village is a question of fact and involves more than a name (CL 1948, § 487.34).

15. SAME—REGULATION—POLICE POWER.

The business of banking is intimately connected with the general welfare of the public and is regulated by the legislature under the police power (CL 1948, § 487.1 *et seq.*).

16. STATUTES—CONSTRUCTION—ADMINISTRATIVE CONSTRUCTION.

The long-standing construction of an act by the administrative official thereof is not binding upon the court but is entitled to great weight when the meaning of the statute is in doubt, especially when the chief legal office of the State has expressed an opinion in accord therewith.

17. COSTS—PUBLIC QUESTION—BRANCH BANKS.

No costs are allowed in suit to determine validity of State banking commissioner's order approving the establishment of a branch bank in an unincorporated community, a public question being involved (CL 1948, § 487.1 *et seq.*).

Appeal from Wayne; Fitzgerald (Neal), J. Submitted June 13, 1956. (Docket No. 44, Calendar No. 46,817.) Decided October 1, 1956.

Bill by Wyandotte Savings Bank, a Michigan banking corporation, and the National Bank of Wyandotte, a national banking association, against Maurice C. Eveland, as Commissioner of Banking for the State of Michigan, and Security Bank, a Michigan banking corporation, to vacate order approving

branch bank in an unincorporated area or village in Ecorse township and to restrain establishment and operation of such a branch bank. Decree dismissing bill. Plaintiffs appeal. Affirmed.

*Marx, Levi, Thill & Wiseman (Lawrence I. Levi* and *Frank M. Wiseman,* of counsel), for plaintiffs.

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Maurice M. Moule* and *Burton P. Daugherty, Jr.,* Assistants Attorney General, for defendant banking commissioner.

*Harry F. Vellmure,* for defendant Security Bank.

SMITH, J. We have here a case of statutory construction. The principal question is a narrow one: May banks operating in this State operate branches in unincorporated villages?

The plaintiffs are the Wyandotte Savings Bank, a Michigan banking corporation, and the National Bank of Wyandotte, a national banking association. The defendants are Maurice C. Eveland, as commissioner of banking for the State of Michigan, and Security Bank, a Michigan corporation. The Wyandotte Savings Bank has its main office in the downtown business section of Wyandotte, with 3 branches in the city, one of which is directly across Fort street from Ecorse township. The National Bank of Wyandotte also has its main office in the city of Wyandotte, and also operates a branch on the border of Wyandotte, directly across Fort from Ecorse township. These branch locations were so placed in order to serve customers in the township area. The defendant Security Bank has its main office in the city of Lincoln Park, and at the time of the trial was operating 4 branches, one of which is in Lincoln Park at

a point approximately 3/10 of a mile from the edge of Ecorse township area.

The portion of the unincorporated area of Ecorse township with which we are here concerned (described in the record in exhibit 8[c]) has had a rapid growth. It had, at the time of trial, a population of between 18,000 and 20,000 persons, having doubled since the 1950 census. The assessed value has more than doubled since 1949, it being in 1954, more than $22,000,000. There were over 5,000 homes in the area. Certain portions are "built up solid" with homes and commercial establishments. In certain areas not yet built up solid there is substantial building activity. "In 1953, 475 building permits were issued in Ecorse township contemplating an expenditure of $3,695,000 of which $2,535,000 was for new residences and $1,160,000 for commercial and miscellaneous construction. That was for the first 6 months of 1953. There was, of course," testified Deputy Banking Commissioner Taylor, "very pronounced residential development, and the business development in prospect, of course, was building up to the levels that were warranted by the area. The residential development at the time the area was inspected had outstripped the business area, I would say." Hand in hand with the establishment of homes came schools, 6 in number (all elementary, "the plans are completed for a high school,") and several churches. The area was served commercially by supermarkets, drug stores, motels and gasoline stations. "Referring to the survey, this lists 40 stores, drive-in restaurant, professional and dental offices, Federal department store, parking for 5,000 automobiles." We have the picture of a thriving, growing community of "new homes, brick homes, occupied by a net income bracket of industrial workers." There was, we are told, "every type of business except the bank. We have no banks." It was the

effort of the defendant Security Bank to place a branch (with the approval of defendant Commissioner Eveland) "very nearly in the center of the greatest amount of the population" which gave rise to this litigation. Why? Because the assemblage of homes, schools, churches and stores we have described was in an unincorporated area. It was merely a part of the township of Ecorse.

Consequently, following the approval of the application of defendant Security Bank for permission to operate a branch office "at or near the intersection of North Line road and Dix-Toledo road, in the unincorporated section of Ecorse township known as Southgate, Wayne county, Michigan," appellants filed their bill in chancery in the Wayne circuit court. It sought to vacate and set aside the commissioner's approval of defendant Security Bank's application to establish and operate the described branch, to enjoin the bank's establishment and operation of the branch so located, "or at any other location in said Ecorse township," to obtain a finding that the approval of such application was an abuse of discretion, and prayed additional relief. After a hearing upon facts stipulated and testimony taken, and after taking further proofs upon a reopening of the case, the trial court dismissed the bill. The holding of the trial court, in summary, was that the statutes permitted the establishment and operation of branch banks in unincorporated villages, that the area in which the disputed branch was authorized "was already an unincorporated village," and that the commissioner had not thereby abused his discretion. Following the denial of motion for new trial or rehearing, the case comes to us on a general appeal.

The plight of the bankless community is not new. It has existed in this country from colonial days and will doubtless continue in one form or another in the future. The results thereof, however, are matters

for the consideration of the legislature, not the courts. We turn to the act to seek within its 4 corners the legislative intent, the degree to which Michigan aggregations of population shall have the banking facilities of a parent or branch bank, or shall remain bankless.

The State banking department is vested with jurisdiction over banks transacting business under the laws of this State. (CL 1948, § 487.3 [Stat Ann 1943 Rev § 23.721].) The powers, duties, management and control of the State banking department are vested in a commissioner of the banking department, who will be hereinafter referred to as the commissioner. His authority is set forth in the Michigan financial institutions act (PA 1937, No 341, as amended [CL 1948, § 487.1 *et seq.,* as amended (Stat Ann 1943 Rev and Stat Ann 1955 Cum Supp § 23.711 *et seq.*)]). The statutory provisions with respect to branch banking had their origin in PA 1933, No 144, which permitted the establishment of branches anywhere within the State, it referring not only to cities but to incorporated or unincorporated villages. (Subsection 8[a], amending section 4 of PA 1929, No 66 [CL 1929, § 11901].) In later codification and revision of the law relating to financial institutions, however, the phraseology has been modified, the present proviso (CL 1948, § 487.34 [Stat Ann 1955 Cum Supp § 23.762]) referring merely to "branches within a village or city." It is the contention of appellants that the present use of the word "village," alone, without descriptive adjective, prohibits the establishment and operation of a branch bank in Michigan outside the limits of an incorporated municipality. If appellants are correct in such contention they must here prevail, for the branch sought to be established is not within the limits of any incorporated city or village. Appellees, on the other hand, contend that the word "village"

as so used refers to the term as commonly accepted, that the settlement, hereinabove described, with its stores and churches, schools and homes, is in fact a village, and, hence, that the branch proposed comes within the statutory provisions.

We note, at the outset, that the term "village" is not defined in the financial institutions act and we reject the contention that its definition in other acts (*e.g.,* CL 1948, § 74.1 [Stat Ann § 5.1465]), defining the meaning of village "whenever used in this act," namely, PA 1895, No 3, for the incorporation of villages, controls its use in the case before us. We employ, rather, the rule set forth in the statute governing the general rules of construction of specific words and phrases as found in CLS 1954, § 8.3 (Stat Ann 1952 Rev § 2.212):

"In the construction of the statutes of this State, the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature, that is to say:

"1. All words and phrases shall be construed and understood according to the common and approved usage of the language; but technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning."

When, however, the words are not explicit (and few words have a content so intrinsic that zeal of advocacy cannot ascribe a contrary meaning) we read and construe them in the light cast by the obvious purpose of the statute and the mischief sought to be remedied. Chancellor Kent expressed our duty in words often quoted:

" 'When the words are not explicit, the intention is to be collected from the context, from the occasion and necessity of the law, from the mischief felt, and the objects and remedy in view; and the intention

is to be taken or presumed, according to what is consonant to reason and good discretion.' " *State, ex rel. Lorenzino,* v. *County Commissioners of McKinley County,* 20 NM 67, 74 (145 P 1083, 1084, LRA1915C, 898), quoting 1 Kent's Commentaries (14th ed), p 462.

See, also, *Melia* v. *Employment Security Commission,* 346 Mich 544.

The word "village" is not a technical word, or one having a peculiar meaning, but is a common word in general usage with an ancient lineage. It is merely an assemblage or community of people, a nucleus or cluster for residential and business purposes, a collective body of inhabitants, gathered together in one group. Michigan has many such, some of them (listed in exhibit 25 in this case) communities long known in the State, from Pickford, near Sault Ste. Marie, to Temperance, near the Ohio border. Their description by the Court, in *Bray* v. *Stewart,* 239 Mich 340, 344, is enlightening:

"Little hamlets, sometimes spoken of as unincorporated villages, will be found in all of the counties in the State. Usually, a general store is first established near a schoolhouse, and this is followed by churches, shops, et cetera. Many farmers build themselves homes in such places, and leave their farms to be cultivated by their sons or by others to whom they are leased. As the number in the little settlement increases, the necessity for more conveniences becomes apparent. Fire protection, sidewalks, and a system of lighting and sewerage may be desired. The property owners residing in the township a distance therefrom have no personal interest in making such improvements, and are loath to contribute by taxation to the expense thereof. The only way in which the residents of such a hamlet can secure them is by having the territory in which they reside incorporated into a village, and the law very properly

makes provision therefor in the act above referred to."

While it is true that these unincorporated villages are not legal entities, it does not follow therefrom that the welfare of their inhabitants is of any less concern than that of the residents of other areas, usually more populous, which, through statutory procedures, have become local political entities, with local governmental rights and powers. In *Russell v. Detroit Mutual Fire Insurance Co.*, 80 Mich 407, we were confronted with the question of whether a statute authorizing defendant to insure buildings "that constitute detached risks in villages and cities" (How Stat, § 4247) was sufficiently comprehensive to cover insurance written on a business located in a "hamlet or collection of stores and houses at this four corners." Although the case went off on another ground, the feeling of the court with respect to the meaning of "village" in the statutory provision is made clear (p 410).:

"Much testimony was given upon both sides as to the character of the place—a four corners—where this store situated. The court instructed the jury that it was a village, in the sense of the statute, being guided by the definition of 'village' as given by Webster, to-wit:

" 'An assemblage of houses in the country, less than a town or city, and inhabited chiefly by farmers and other laboring people.'

"It is the contention of defendant's counsel that the statute confines the risks to *incorporated* villages, or at least to those that are *platted*. We are not inclined to so limit it; but we think, from the facts of this case, that the question becomes unimportant."

The court concluded, on this phase of the case, that (p 411) "The testimony shows this place to be a village in the common acceptation of the term."

A question similar in principle arose in the State of Utah. A statute made it unlawful, in substance, to maintain any camp or corral in such a place that its "refuse or filth" would "naturally find its way into any stream of water used by the inhabitants of any * * * village for domestic purposes." Does such a statute protect merely those who have incorporated their settlement, leaving the inhabitants of an unincorporated village at the mercy of anyone who might see fit to defoul its water supply? The court's answer was clear:

"From an examination of the act, which is amended by the section above quoted, it seems clear that by the use of the word 'village' the intent of the legislature was to include such settlements as the one in question, and there appears to be no reason why the people of such a settlement, who are using the water of a stream for domestic purposes, should not have extended to them the protection which the law affords. Their health and comfort demand equal protection with those who live in larger and more densely settled villages, towns, and cities. It is a wise and beneficial law, calculated to promote the comfort and protect the health and lives of the inhabitants, and its operation and application must not be unreasonably abridged by judicial construction." *People* v. *McCune*, 14 Utah 152, 154 (46 P 658, 35 LRA 396).

The reasoning of the court commends itself to us and is applicable to the case at bar. There seems to be no reason, and certainly none is found in the statute, why the lack of formal incorporation should deprive a thriving community of some 18,000 people of the convenience of a branch bank. On the contrary, the need for the bank and the evils resulting from the community's deprivation thereof, would seem clear. We are unimpressed with the argument that mention, in section 34 of the act (CL 1948,

§ 487.34 [Stat Ann 1955 Cum Supp § 23.762]), of "the limits of the city or village" interposes an obstacle to the establishment of the branch here involved. When and if the commissioner of banking authorizes the establishment of a branch in an open cornfield, we may have to meet the question (among others) of whether or not such branch is within the village "limits," but here it is proposed to establish the branch in the approximate center of the greatest concentration of population in the area.

Nor are we left without statutory guidance in the matter from the financial institutions act itself. In arriving at the legislative intent we do not confine our attention solely to one specific clause of the act. Rather, as we observed in *United Insurance Co.* v. *Attorney General,* 300 Mich 200, 203, 204, quoting with approval from the earlier case of *Attorney General, ex rel. Zacharias,* v. *Detroit Board of Education,* 154 Mich 584:

" 'It is a cardinal rule of statutory construction that full effect shall be given to every part of the act under consideration. Every clause and every word is presumed to have some force and meaning.' "

A review of the act as a whole discloses that the word "village" is found in sections other than that above quoted. Thus we find that provision is made in section 42 of the act (CL 1948, § 487.42 [Stat Ann 1943 Rev § 23.773]) for the situation arising when a bank is located in a city or village which is annexed to a city: it shall continue to be subject to the requirements as to capitalization and reserves to which it would have been subject had the annexation not taken place. Are such measures applicable if the territory annexed formed an incorporated village, but inapplicable if the village were unincorporated? We would, without more, be reluctant to so conclude. We note, moreover, that section 40 of

the act (CL 1948, § 487.40 [Stat Ann 1943 Rev § 23.771]) specifies the minimum capital requirements for the organization of banks, it depending upon the population of the "incorporated or unincorporated village," or city, where the business is to be transacted. Such bank (section 34 [CL 1948, § 487.34 (Stat Ann 1955 Cum Supp § 23.762)]) may establish branches "within the limits of the city or village in which said bank is located." If, then, a parent or unit bank be established in an incorporated village, section 34 permits it to operate a branch therein. But if the parent or unit bank be established in an unincorporated village, appellants' construction of the word "village" would forbid such bank to operate a branch, although the 2 villages might be of equal size, equal commercial activity and have equal need for branch banking facilities. All of this in spite of the fact, as we have said, *Moran v. State Banking Commissioner*, 322 Mich 230, 244, that "the primary function of banking facilities involves the welfare and convenience of the portion of the public concerned." We are loath to employ a construction of a statute which leads to whimsical and arbitrary results, resulting in unjustifiable discrimination between communities. It seems obvious that the business convenience and safety of those dwelling in the relatively small unincorporated communities merit, equally with those dwelling in the larger towns and cities, the legislative solicitude, and we are not prepared to say, upon a fair reading of the act as a whole, that they have not received it. Our holding on this phase of the case is that the Michigan financial institutions act permits the establishment of branch banks in unincorporated villages.

If the commissioner was, as we conclude, lawfully entitled to authorize the establishment and operation of the branch in question, did he abuse the discretion confided in him by so doing? The act requires

(section 34 [CL 1948, § 487.34 (Stat Ann 1955 Cum Supp § 23.762)]) that the commission shall not permit the establishment of branches unless it is "satisfied" as to "the necessity for the establishment of such a branch." (This, and other, criteria in section 34, *supra,* closely parallel, if they are not substantially identical with, the criteria of section 26 [CL 1948, § 487.26 (Stat Ann 1943 Rev § 23.754)], relating to the establishment of unit banks.) The discretion thus vested in the commission as to necessity, however, is not the necessity of absolute or indispensable need, *Moran* v. *State Banking Commissioner, supra,* nor at the other extreme is it the imaginary need of whimsy or caprice, or even the "need" of mere convenience. It is, rather, a substantial or obvious need in view of the disclosed relevant circumstances. The duties of a public officer with respect to discretion imposed were well summarized by this Court in *G. F. Redmond & Co.* v. *Michigan Securities Commission,* 222 Mich 1, 5, wherein we held:

"While the police power, inherent in the State, is incapable of being defined and subjected to limitations in the abstract, its exercise in any given direction, such as the regulation of trades, occupations and professions, is capable of definite expression, and must, if delegated to a commission or administrative board, define its purpose and the means of attainment thereof, and do this in language leaving no wide administrative discretion, and no discretion at all of a legislative nature. The power to carry out a legislative policy enacted into law under the police power may be delegated to an administrative board under quite general language, so long as the exact policy is clearly made apparent, and the administrative board may carry out in its action the policy declared and delegated, but it cannot assume it has been vested with power beyond expressed legislative delegation, and must ever seek its way

in the light shed by the legislative mandate. This marks the line between arbitrary officiousness and the exercise of delegated power to carry out a designated policy under the police power."

See, also, *Hazel Park Racing Association, Inc.*, v. *Racing Commissioner,* 343 Mich 1.

The defendant Security Bank, then, having made application for the opening of a branch bank in the area described, a member of the staff of the banking department was assigned to make a survey of the area. "We had a man go into the field to inquire into the factors of population and all of those factors which would enable us to pass on the question of the necessity of a bank or branch being established in that particular area, and also as to the possibilities of a successful operation." In addition, Mr. Herman G. Taylor, deputy banking commissioner, made a personal inspection of the territory. Certain of the information obtained is set out above. To keep this opinion within reasonable bounds it has been only partially summarized. After a review thereof we agree with the trial court that "This court cannot take seriously the argument that any discretion was abused by the commissioner in authorizing the establishment of this branch bank." We will point out, in this regard, that the action of the township board in giving the name of Southgate to the area here involved is not determinative of whether or not there is an existing village. The resolution merely gives the area a name. But the existence of a village is a question of fact and involves more than a name. We cannot conclude upon this record that this "built up solid" assemblage of homes, stores, churches, and schools here described was other than an actually existing community, regardless of the action of the township board. We will observe, also, that our determination is not reached upon, nor is it particularly aided by, the contents of the voluminous cor-

respondence (including plaintiff Wyandotte Savings Bank's letter requesting authority to itself establish a branch in Ecorse township) between the commission and various applicant banks concerning branches in this and other areas. The question, however, is simply one of statutory power and authority, involving the welfare and convenience of the public, and the views expressed as the parties compete for desirable locations do not control our decision.

We will make one final observation on this matter. The business of banking is intimately connected with the general welfare of the public. Our legislature has, for many years, regulated banking activities under the police power. For many years, also, those in charge of the administrative construction of the act have construed it to authorize the operation of branches in unincorporated villages, and exhibit 25, before us, lists many such. Thus the conclusion we have reached coincides with the contemporaneous construction long placed on the statute by the department charged with responsibility for its administration. Crawford, Statutory Construction, p 388, § 218. Obviously such construction does not bind us. It is equally obvious, however, that, should the meaning of the statute be in doubt, administrative construction over a period of years is entitled to great weight, *Boyer-Campbell Co.* v. *Fry,* 271 Mich 282 (98 ALR 827); *United States* v. *Jackson,* 280 US 183 (50 S Ct 143, 74 L ed 361). Particularly is this true when the chief legal office of the State (see Opinions of Attorney General, August 16, 1950, No 1275, authorizing establishment of branches "within the confines of a well-defined community referred to as an unincorporated village") has supported such construction.

The resolution of the case upon these grounds makes it unnecessary to consider the other questions raised and argued.

The decree of the trial court is affirmed.   No costs, a public question being involved.

DETHMERS, C. J., and SHARPE, EDWARDS,. BOYLES, KELLY, CARR, and BLACK, JJ., concurred.