AMERICAN BANK & TRUST COMPANY, a Michigan Banking Corporation, Plaintiff-Appellant,

v.

James J. SAXON, Comptroller of the Currency of the United States, the Dart National Bank of Mason, a National Banking Association, Defendants-Appellees.

No. 17140.

United States Court of Appeals
Sixth Circuit.

Feb. 28, 1967.

Richard B. Foster, Lansing, Mich. (Foster, Campbell, Lindemer & McGurrin, Theodore W. Swift, Richard B. Foster, Jr., Edmund E. Shepherd, Lansing, Mich., on the brief), for appellant.

John P. O'Brien, Lansing, Mich. (Marshall, O'Brien & Skehan, Lansing, Mich., on the brief), for appellee Dart Nat. Bank.

David L. Rose, Atty., Dept. of Justice, Washington, D. C. (John W. Douglas, Asst. Atty. Gen., Edward Berlin, Atty., Dept. of Justice, Washington, D. C., Harold R. Beaton, U. S. Atty., Grand Rapids, Mich., on the brief), for appellee Saxon, Comptroller.

Frank J. Kelley, Atty. Gen., Robert A. Derengoski, Sol. Gen., Maurice M. Moule, Asst. Atty. Gen., Lansing, Mich., on the

brief for Michigan Attorney General, amicus curiae, on behalf of State Banking Commissioner.

Before O'SULLIVAN and CELE-BREZZE, Circuit Judges, and CECIL, Senior Circuit Judge.

O'SULLIVAN, Circuit Judge.

On March 20, 1964, the Dart National Bank, a national bank of Mason, Michigan, filed application with the Comptroller of the Currency for authority to establish a branch bank in the unincorporated village of Holt in Delhi Township, Ingham County, Michigan. The application was opposed by American Bank & Trust Company, a Michigan Banking Corporation, which was already operating a branch bank in that village. The relevant Federal and Michigan statutes forbade Darts opening a branch in the same village as American's existing branch. 12 U.S.C.A. § 36(c) (2); M.S.A. § 23.762, Comp.Laws 1948, § 487.34. At the suggestion of the Comptroller, Dart amended its application so as to adopt a location across the street from that set out in its original application. Thereupon, on July 14, 1964, the Comptroller, upon his determination that Dart's secondly chosen location was in a village separate from the village of Holt, issued the desired authorization.

Plaintiff-appellant, American Bank & Trust Company, brought this suit for declaration of the illegality of, and to enjoin Dart from operating under, the certificate issued to Dart by the Comptroller. If Dart's new branch and American's existing branch are in the same village, American is entitled to the relief sought. After a trial on the merits, the District Judge sustained the Comptroller's finding and dismissed the complaint. We reverse.

■ The law of the case is clear. In Michigan the question of whether an area is a village is primarily one of fact. Wyandotte Savings Bank v. State Banking Commissioner, 347 Mich. 33, 47, 78 N.W.2d 612, 620 (1956). And a determination by the Comptroller that a particular location within the state constitutes a village is beyond judicial interference, absent a holding that such determination is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, Community National Bank of Pontiac v. Saxon, 310 F.2d 224, 226, 227 (CA 6, 1962); we will not, therefore, set aside a finding by a District Judge that an involved determination by the Comptroller is supportable, so tested, unless we conclude that such finding is clearly erroneous.

■ The Comptroller has of necessity broad discretion in determining what is and what is not a village, for the concept of a village, as announced by the Michigan court, suggests the difficulties presented to him and the various factors he must weigh:

"The word 'village' is not a technical word, or one having a peculiar meaning, but it is a common word in general usage with an ancient lineage. It is merely an assemblage or community of people, a nucleus or cluster for residential and business purposes, a collective body of inhabitants, gathered together in one group." Wyandotte Savings Bank v. State Banking Commissioner, supra, 347 Mich. at 41, 78 N.W.2d at 617.

"It is a settlement, a centralized populous area having a general common residential and business activity serving the particular area or district * * *. It has been analyzed as a 'trading area' distinct from that assigned to 'municipality'." Bank of Dearborn v. State Banking Commissioner, 365 Mich. 567, 571, 114 N.W.2d 210, 212 (1962).

Under Michigan law an area's status as a village is not affected by its lack of incorporation or established and precise geographical boundaries, Wyandotte Savings Bank v. State Banking Commissioner, supra; Bank of Dearborn v. State Banking Commissioner, supra. According to the Michigan Attorney General a village does not even need to have a name, Opinion, Attorney General of Michigan,

No. 3145 Vol. 1, 1957, p. 503. We, however, do not read this law to mean that any piece of ground is necessarily a village because the Comptroller says it is.

In its initial application, Dart asked for permission to open a branch admittedly in the same village as that wherein the appellant's bank was located—indeed, as the Comptroller's field examiner concluded, in the very "core of the community" of Holt. Under the Act of Congress, 12 U.S.C.A. § 36(c) (2),[1] and the Michigan statute, M.S.A. Sec. 23.762,[2] this could not be authorized by the Comptroller of the Currency. But a solution to the problem was found. Dart, at the suggestion of the Comptroller, moved its site 66 feet from the east to the west side of Aurelius Road, and some distance to the north of its originally proposed site. The Comptroller then declared that the other side of the street was in a separate village, a village not served by any other branch bank.[3]

The area involved in this litigation is in Delhi Township which is south of and contiguous to the City of Lansing, Michigan; the only "place" identified within this township was the unincorporated village of Holt. Its population, some 7,000 people, was served by the same school district, the same sewer district, the same postal district and the same telephone exchange. Until its dissection by the Comptroller, this village lay astride Aurelius Road. Business places, schools, churches and other physical structures identified with the village name of Holt were located on both sides of the street.

Prior to the beginning of Dart National Bank's activity to establish a branch in Holt, a new shopping center had been projected to be located in the southern half of the triangle comprising the center of the village. The first proposed site for Dart's new bank was on the east side of Aurelius Road and apparently within the area of this shopping center. It is fair to assume that this choice of a site was prompted by Dart's desire to be in the shopping center, which was described in its initial application to the Comptroller as being "the recognized center of this rapidly developing community."

A history of the subsequent administrative proceedings demonstrates why Dart found it necessary to choose another location, and underscores why we must conclude that the Comptroller's decision to approve the new site must be regarded as arbitrary and unjustifiable. On March 17, 1964. the Dart National Bank, in a letter to the Seventh Federal Reserve District at Chicago, expressed its desire to apply for permission to establish a branch within the "confines of an unincorporated village, Vevay (sic) Township, Ingham County, Michigan." This was followed by an application on a Treasury Department form describing the proposed location in Delhi Township at the "N.E. corner of Delhi and Aurelius Roads; 450 feet No of said corner, E side of Aurelius Road," with the comment that "the name 'Holt' has come to be given to a *central* part of Delhi Township. It is nothing but a name

---

1. 12 U.S.C. § 36(c): "A national banking association may * * * establish and operate new branches:

   "(2) * * * at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks."

2. M.S.A. Section 23.762 provides in part: "Any bank having a capital of at least $50,000.00 may, with the written approval of the commission, establish and operate a branch or branches within a village or city other than that in which it was originally chartered: * * *. Provided further, that no such branch shall be established in a city or village in which a state or national bank or branch thereof is then in operation:"

3. For easier understanding, we set out as Appendix A our own rough sketch of what was described as the "core of the community" of Holt in the report of the Comptroller's field examiner, showing the changes made in the location of Dart's proposed branch.

* * *. This area has all the characteristics of a city or village, homes, businesses, etc., but it is not." In the summary of information furnished by the Dart bank for approval of its original site, it was reported that the existing branch of the American Bank and Trust Company was the only banking facility "within the service area in which we seek our branch." Additional contents of such summary asserted that "the proposed shopping center location for the new branch near the intersection of Delhi (Holt Road) Avenue and Aurelius Road is fast becoming the *recognized center* of this rapidly developing community;" and that Aurelius Road was becoming "the main north and south artery *for this community*." (Emphasis supplied.) Attached to the summary was a letter from the Supervisor of Delhi Township expressing a view that "a branch *here in Holt* would be a success." (Emphasis supplied.)

The foregoing was followed by a survey of the area of Dart's proposed site by a National Bank Examiner and a Regional Comptroller of the Currency. The report made by these individuals referred to the site as being in the community of Holt and went on to say that the "triangle formed in the *near center* of Holt by Cedar Street, Delhi Avenue and Aurelius Road is the *center* of business for the community"; "the proposed branch is to be located within a shopping center yet to be built * * *. The shopping center will be situated on a 15 acre plat of ground which is ideally situated *in the heart of the present community of Holt*." (Emphasis supplied.) This report was filed April 29, 1964, and in our view clearly established that Dart's proposed branch was to be located in the *center* of the village of Holt.

Previously, on April 3, 1964, American Bank & Trust, by letter to the Regional Comptroller, objected to the establishment of Dart's proposed branch in the village of Holt on the ground that American's branch was already there. The letter requested a "formal hearing" on its opposition. On May 8 following, representatives of American called at the office of a Deputy Comptroller of the Currency. That office's short memorandum of the conference then had contains no comment or intimation that a different site would be suggested to the Dart people. The memorandum recites American's intention to take legal action to resist the establishment of Dart's branch at the originally proposed site.

It is fairly inferable that the law department of the Comptroller, after study of Dart's application and the field examiner's report, concluded that Dart's application could not legally be granted for the reason that its proposed branch would be in the same village as American's. There followed some reconsideration of the matter by Dart. Its representatives met with the legal department of the Comptroller's office on May 12, 1964, and on May 25 Dart wrote to that office as follows:

"It was your suggestion that instead of requesting to be located on the east side of Aurelius Road, being at the west edge of the Shopping Center, to be constructed on the east side of Aurelius Road, that we cross this four lane stretch of Aurelius Road and request your office amend our application as to location to the west side of Aurelius Road.

"This we have done."

It can be assumed that this was followed by further exchanges between the Dart people and representatives of the Comptroller with the result that on July 14, 1964, the Comptroller approved Dart's amended application to establish its branch,

"North of the intersection of Delhi Avenue and Aurelius Road, on the west side of Aurelius Road, immediately to the south of the *Holt Professional Building*, Delhi Township, Ingham County, Michigan."

The complaint in this case was then filed on July 21, 1964.

The record does not tell us whether American Bank & Trust was given ad-

vance advice of Dart's change of site or given an opportunity to be heard on the matter. The record is silent as to what persuaded the Comptroller to determine that what had been clearly identified to him as the "center of the village of Holt" was, on the contrary, its western limits and that a new village came into being across the street. It is clear, as indicated before, that Dart's effort to establish its branch at the "center of Holt" was its desire to become part of the new shopping center. Its president had on May 5, 1964, written to the law department of the Comptroller that "since your telephone call this morning" he had been in continuing conferences with, among others, the "developer of the shopping center which is in process of going in as a part of the new, *separate and distinct trading area* in Delhi Township." (Emphasis supplied.) The new shopping area, however, did not find its way into the new village, as the Comptroller fixed Aurelius Road as the eastern boundary of such village.

■ In preparation for trial, plaintiff sought inspection of the Comptroller's file. This was withheld until its production was finally ordered by the District Judge. When produced, however, that part of the file which would have disclosed whether any investigation had been made after Dart had elected to follow the Comptroller's suggestion to move its site across the street, and if such investigation had been made what report had issued from it, was covered up— the Comptroller doing so by exercise of "executive privilege." Thus neither the District Judge nor this Court has ever been informed of the exchanges between the Dart people and the Comptroller's representatives and the new material, if any, from which the Comptroller made the critical determination now claimed to be beyond judicial scrutiny. It is difficult to see just how this determination can be regarded as anything but arbitrary in view of the representations made in Dart's original application and the material contained in the report of the examination by the Comptroller's field

man which assumed and asserted that the west side of Aurelius Road was not the eastern boundary of a separate village, but was immediately adjacent to the center—the heart—of the business area of the village of Holt. This withholding of the basis for the Comptroller's discovery of a new village was compounded when upon the trial and at the close of plaintiff's proofs, the Comptroller's counsel announced that "the Comptroller does not intend to offer any proofs other than the Comptroller's file [truncated as aforesaid] which has been offered in evidence. We join with defendant Dart National Bank and associate ourselves with the proofs rendered by the Dart National Bank." In our view, the plaintiff's proofs and the Comptroller's file had, by then, clearly proved that Dart's new site was in the village of Holt. Consistent with the pattern of non-disclosure by the exercise of executive privilege, was the fact that none of the members of his staff, whose investigations and reports provided the Comptroller with the information from which he made his determination, testified in support of his decision. It is significant also that no one connected with the Dart National Bank took the stand to support its claims.

In addition to the case made out for it by the factual content of the Dart application and by the open for inspection part of the Comptroller's file, plaintiff's other proofs supported its claims. Lay and expert evidence that both sides of Aurelius Road in the area involved were in the same village, went unimpeached. Maps and aerial photographs gave visual support to appellant's position. Attached hereto as Appendix B is a copy of part of one of the trial exhibits. This covers four sections of land (4 square miles) showing the highway and street layout of what was the village of Holt and environs until made into two villages by the Comptroller. Of interest was a poll taken of the residents of the area determined by the Comptroller to be a separate village. This area contained about 730 homes. These homes were visited and where responses could be ob-

tained, a question was asked of the person answering, "Do you consider that you live in Holt?" Of a total of 374 responses received, 99% were in the affirmative. The survey was made by employees of the plaintiff bank, but their credibility, and the validity of their poll, was neither weakened by cross-examination nor impeached by any contrary proof.

We turn now to defendants' proofs. First produced was Joseph Kiersey, the Supervisor of Delhi Township. He testified that the character of the township on either side of Aurelius Road was substantially the same and that such street was no barrier either for residential or economic purposes. Contrary to defendants' contention, this—their most important—witness testified that he considered that the western boundary of the village of Holt was one-half mile west of Aurelius Road. This would put Dart's new branch site, not in a separate village, but near what the Comptroller's file disclosed—the center of the village of Holt. He gave his estimate that there were about 7,200 people within what was generally considered the village of Holt.

Supervisor Kiersey went on to tell of the hopes and prospects for Delhi Township, in an attempt to demonstrate that economically distinct areas existed on both sides of Aurelius Road, hence justifying additional branch banking facilities. He mentioned a trailer park for some 484 units in which some footings had been put in. This place, however, appears from the exhibits to be out in the country and while it is west of Aurelius Road, it is about 2½ miles southwest from Dart's new location and actually farther from it than from the original site at the center of Holt. Kiersey testified that there had been more building permits issued in 1964 for houses west of Aurelius Road than east of it, but that the volume of sales was about the same on both sides of Aurelius. He referred to a 240 unit multiple apartment development in prospect west of Aurelius Road, but recognized as the most exciting development in his township, the shopping center on the east side of Aurelius in the *center* of Holt which was to be known as the "Holt Shopping Center." Another defense witness was the proprietor of a substantial enterprise known as Hartley's Midway Supermarket. He testified that the area in which his store was located and extending as far as Dart's new site was sometimes referred to as Midway, and there was evidence that some other businesses had used the name of Midway. Hartley's explanations of his use of the word Midway were that "it is a carry over of the geographic area. * * * the people in this area that reside there thought of us as being in the midway, and we used it to tie in with the state of mind of what people thought." Hartley's trading area, however, was, as he testified, both east and west of Aurelius. His establishment was situated about a mile northwest of Dart's new site, substantially adjacent to the city limits of Lansing. A real estate developer told of some housing development planned for an area west of Aurelius Road. There was other evidence that the area west of Aurelius Road was enjoying residential and commercial growth, with more houses being built on the west than on the east side of Aurelius. None of this, however, detracted from the clear fact that the Dart bank's new location was in the *center* and not outside of the relevant trading area.

The foregoing was the substantial total of proofs put on by the Dart bank's witnesses. We cannot find it giving any support for the Comptroller's determination. It should be emphasized that defendants produced no witness who said that there was a separate trading area beginning on the west side of Aurelius Road; no witness, even by opinion evidence, supported the claim of a separate village. The most informed of defendant's witnesses, the township's supervisor, said directly that the east and west sides of Aurelius Road were in the same village.

It takes little imagination to be aware that the Dart bank moved across the street, not to service a separate village, but to be immediately adjacent to the new Holt Shopping Center, which Dart's original application and the Comptroller's file identified as being at the center —not the edge—of the village of Holt.[4]

We should make clear that we are not dealing with an area like those considered in Bank of Dearborn v. State Banking Commissioner, 365 Mich. 567, 572, 114 N.W.2d 210, 212, 213 (1962) where the Court was speaking of today's sprawling suburbs with *separate trading areas needful of banking service:*

> "The law has already indicated in its definition of a village that economic rather than governmental, or geographical or physical boundaries are the controlling factor. * * * The striking similarity of the intersection of Ford road and Telegraph and the intersection of Beech Daly Road and Ford is convincing proof that the Commissioner exercised sound judgment in designating each as a 'village'. *Each is a separate trading area.* Each is a separate cluster of residence and business establishments. *Each is at a major intersection.*

> \* \* \* \* \* \*

> "Each has its own potential for growth. Continuity or homogeneity over a large area makes them nonetheless economically separate. If continuity and homogeneity were restrictive factors, as plaintiff contends, then conceivably vast suburban unincorporated areas with sizeable populations and containing numerous trading and business centers *at intersections interspersed throughout, even at considerable and inconvenient distances,* would

be deprived of banking accommodations." (Emphasis supplied.)

We are, rather, dealing with an attempt to make two villages out of the same *trading area* proximate to *the same intersection.* The following excerpt from the amicus brief of the Michigan Attorney General is pertinent here:

> "While urging reversal of this specific case, the Attorney General is gravely perturbed by the precedent which might be established in event of affirmance. Should the Comptroller's decision in this particular case be allowed to stand, if the small unincorporated village of Holt with a population of less than 7,000 may arbitrarily be carved in twain to accommodate another branch, a project which would never be sanctioned for state banks by Michigan authority, it would follow that any other small unincorporated village in this State might be similarly subdivided, and consequently, the very existence of state banks might be placed in jeopardy through unlawful competition."

The District Judge's opinion refers to decisions of three of Michigan's U. S. District Judges who on evidence before them concluded that they disagreed with the Comptroller's determination as to the existence of a village, but felt required to sustain his contrary act of discretion. We think this is the case where the Comptroller's decision cannot be sustained even by respecting his broad discretionary powers.

■ The District Judge buttressed his opinion, on the granting of summary judgment on the question of the need for a due process hearing, by adding an appendix thereto. Therein he discussed the

---

4. An interesting, but not controlling, side light is the following. After getting approval to proceed, the Dart bank announced to its prospective customers "The Dart National Bank has been approved to establish a new bank *in Holt.*" After this Court had denied continuance, pending appeal, of an injunction which had postponed the establishment of its new branch, the Dart National Bank announced its

new location "*In Holt*, on Aurelius Road north of Delhi Avenue," and made further reference to its "*Holt Office*," identifying the Dart National Banks as being located at Mason, Michigan, and *Holt, Michigan.* Whether legally permissible or not, it will be a novelty to have separate villages across the street from each other, but bearing the same name.

policy which he considered was served by vesting broad discretion in the Comptroller to allow increased branch banking by national banks. There is indeed substantial and respectable opinion that there should be greater liberality in allowing such expansion of the facilities of national banks. However, the accomplishment of this good policy should be left to the legislative branches of the national and state governments and should not be brought about by executive fiat, with the judiciary withholding legitimate interference. Judge Talbot Smith well expressed this thought in Bank of Dearborn v. Saxon, 244 F.Supp. 394, 398 (E.D. Mich.1965), as follows:

> "Maybe the laws should be amended to permit the utmost flexibility in branch banking. Maybe they should not. Congressional debate on this issue has gone on for years. But it is not for defendant Saxon and defendant bank to amend our 'antiquated' laws by clever devices of evasion, covered by a broad grant of discretion and cloaked under the privileges of the executive branch of government."

We hold that the District Court's factual finding that the site of Dart National Bank's branch is in a village separate from that wherein plaintiff-appellant's branch is located is clearly erroneous, as is his holding that the Comptroller's like determination was not arbitrary and capricious.

Our decision on the above central issue obviates our consideration of two other appellant contentions. It asserts that the Comptroller was required, prior to his issuance of a certificate, to hold a due process hearing at which appellant's objections could have been adequately presented. Were it essential to our opinion, we would follow the decision of the Fourth Circuit in First Nat'l Bank of Smithfield, North Carolina v. Saxon, 352 F.2d 267, 271 (C.A.4, 1965), to the extent that it holds that a due process hearing is not a prerequisite to the Comptroller's action.

Appellant further contends that the District Judge erred by eliminating, through summary judgment, consideration of the question whether the Comptroller adequately inquired into "the necessity for the establishment of such branch * * * and the prospects of successful operation if established." The Michigan statute in M.S.A. § 23.762 requires determination of the quoted inquiry before approval of establishment of a branch. The District Judge held that only state "restrictions as to location," 12 U.S.C. § 36(c) (2), were applicable to establishment of national bank branches. His view was that it "does not appear that restrictions on state branch banking, *other than those relating to location,* are applicable to national banks seeking to establish branches outside the limits of the municipality in which it is situated." We are still of the view that we need not, and we do not, reach this question, but the recent decision of the Supreme Court of the United States in First Nat'l Bank of Logan v. Walker Bank, 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343 (U.S.Dec. 12, 1966), appears to sustain appellant's position. While the Supreme Court was there dealing with a state restriction different in kind than Michigan's requirement of an inquiry into "necessity" the direction of the decision is that all of a state's restrictions apply to national banks.

The judgment of the District Court is reversed and the case remanded for entry of an order vacating and setting aside the herein involved certificate issued by the Comptroller of the Currency to the Dart National Bank, and enjoining the said bank from operating a branch banking facility under authority of the foregoing certificate of the Comptroller at the place described therein, or at any other place within the Village of Holt, Michigan.

MIDWAY MARKET

APPENDIX A.

"Care of the Community of Holt".

N

W

E

S

CEDAR ST.

NORTH

CENTER

DECAMP

U.S.

AURELIUS ROAD

SHOPPING CENTER AREA

A ⊗

D² ⊗

B D'

WEST HOLT

DELHI AVE

⊗

A: Branch of American Bank & Trust Co.

D' Dart Banks originally proposed site.

D² Dart's second location across the street.

6a

Appendix B

N