**COMMUNITY BANK OF WASHTENAW,**
a Michigan banking corporation,
**Plaintiff,**

v.

**James E. SMITH, as Comptroller of the Currency of the United States of America, and National Bank of Ypsilanti, a national banking association, Defendants.**

**Civ. A. No. 4–71786.**

United States District Court,
E. D. Michigan, S. D.

July 19, 1974.

Essel W. Bailey, Jr., Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for plaintiff.

Edward Jiran, Office of Comptroller of Currency, Washington, D. C., Gwenn Carr, Asst. U. S. Atty., Detroit, Mich., Edwin L. Pear, Ann Arbor, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

In this action plaintiff has filed a motion for a preliminary injunction seeking to enjoin defendant Smith, as Comptroller of the Currency, from continuing to approve the certification of defendant National Bank of Ypsilanti, and to enjoin defendant National Bank of Ypsilanti from continuing to operate a branch bank in Ypsilanti Township, Michigan.

Jurisdiction is conferred on this court pursuant to 28 U.S.C. § 1331(a) and 5 U.S.C. § 701.

Defendant Smith has filed a motion for summary judgment and, at the hearing held by this court to decide plaintiff's motion for injunctive relief and defendant's motion for summary judgment, all parties additionally agreed to have the court decide this matter on the merits.

The record before the court on these motions is confined to the administrative record made by the office of the Comptroller of the Currency in reviewing and ultimately granting defendant National Bank of Ypsilanti's application for certification of a branch bank. In Camp v. Pitts, 411 U.S. 138, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1972), the Court stated the only supplementation of the administrative record could be ". . . from the *agency* [emphasis supplied], either through affidavits or testimony, [or] such additional explanation of the reasons for the agency decision as may prove necessary." 411 U.S. at 143, 93 S.Ct. at 1244.

Based on the administrative record in this case, the uncontroverted facts establish the following setting for these motions.

Plaintiff, Community Bank of Washtenaw (hereinafter referred to as "Community Bank"), is a Michigan banking corporation organized on July 6, 1972, and authorized on September 11, 1972, to conduct a general banking business in Ypsilanti Township, Washtenaw County, Michigan. Community Bank's main office is its only banking facility.

Defendant National Bank of Ypsilanti (hereinafter referred to as "National Bank") is a national banking corporation with headquarters in the City of Ypsilanti, Michigan.

On January 31, 1973, National Bank filed an application for permission to establish a branch bank in the vicinity of Hewitt and Ellsworth Roads, Ypsilanti Township, Washtenaw County, Michigan. Subsequent to acceptance of the application by the Comptroller's Regional Office, competing banks and supervisory agencies were advised of the filing of the application and a field investigation was conducted by a national bank examiner. Pursuant to the request of Community Bank, a hearing was held at the office of the Regional Administrator, Seventh National Bank Region, Chicago, Illinois, April 3, 1974. During the hearing, extensive testimony and documentary exhibits were received from the applicant and plaintiff, and additional documentary submissions were received from both parties subsequent to the hearing.

On September 12, 1973, the Comptroller initially disapproved the application of National Bank. On September 25, 1973, National Bank requested reconsideration of its disapproved application

and submitted additional, updated data and information in support of its application for reconsideration. At the request of Community Bank, a second hearing was convened February 27, 1974, and additional testimony and documentary exhibits were accepted by the Comptroller's Regional Administrator. On May 21, 1974, the Acting Comptroller approved the branch bank application of National Bank. On May 28, 1974, notice of approval of the application was mailed to Community Bank and defendant National Bank.

Plaintiff contends in its motion for injunctive relief that the Comptroller's procedure for notification of approval and certification of National Bank's branch violated due process and that the Comptroller's certification itself is void because it violates Michigan law.

Defendant Smith contends in his motion for summary judgment that there was no denial of plaintiff's due process protections at any stage prior to this litigation, that all Michigan laws were complied with and, therefore, there is no genuine issue of material fact presented in plaintiff's case and the decision of the Comptroller should be upheld.

It is clear the appropriate standard for review of the decision of the Comptroller in this case is whether the adjudication was " 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' as specified in 5 U.S.C. § 706(2)(A)". Camp v. Pitts, *supra*, 411 U.S. at 142, 93 S.Ct. at 1244.

### I.

■ Plaintiff contends it was deprived of due process of law because it did not receive the Comptroller's letter of notification that the branch application had been preliminarily approved before the Comptroller issued final approval and a certificate permitting the branch to be established.

The Comptroller's published regulations, 12 C.F.R. § 5.13 (1971), provide:

"The applicant and all persons so requesting in writing shall be notified of the final disposition of the application by the Comptroller of the Currency."

On May 28, 1974, official notification of the branch bank approval and certification was sent to all concerned parties. The quoted regulation does not provide for priority notification of approval and certification to an opposing party so that judicial proceedings may be instituted prior to notification to the party seeking approval and certification. Such a notification procedure would require the Comptroller's office to grant a litigious advantage to a party opposing approval and certification, and would be contrary to the spirit of the administrative proceedings of that office. Failure to receive priority notification of the approval and certification of the branch bank, either officially or unofficially, does not constitute a denial of due process in this case.

■ Moreover, plaintiff cannot complain that the Comptroller violated any other due process protection in this case. It is clear that neither the National Bank Act nor the Administrative Procedure Act requires the Comptroller to hold a hearing or to make formal findings on the hearing record when passing on applications for new banking authorities. *See,* 12 U.S.C. § 26; 5 U.S.C. § 557; Camp v. Pitts, *supra,* 411 U.S. at 140–141, 93 S.Ct. 1241. Despite any mandate for these traditional due process protections, during the administrative process the plaintiff was alerted to the filing of the initial application by National Bank as soon as the Regional Administrator had received it. At the request of the plaintiff the Regional Administrator convened a public hearing at which all interested parties were given the opportunity to present testimony, documentary evidence and post-hearing submissions. Plaintiff was notified by the Comptroller's office that the initial application had been disapproved. Upon acceptance of the applicant's request for reconsideration of its branch application the Comptroller again notified plaintiff of his decision to reconsider. Pursuant

to the plaintiff's second request for another administrative hearing the Regional Administrator convened a second public hearing on the applicant's proposal for reconsideration whereupon all interested parties were again permitted to present testimony, documentary evidence and post-hearing submissions. Upon approval of the branch application, as reconsidered, the Comptroller's office once again posted a letter addressed to the plaintiff, dated May 28, 1974, containing notice that the application had been approved.

In short, the Comptroller provided every possible opportunity for the plaintiff to present its views and pertinent facts before the Comptroller's consideration during the administrative processing of the challenged branch application. Indeed, the Comptroller went beyond the published procedures to notify the plaintiff of his actions. Plaintiff's assertion that it has been deprived of due process of law is entirely without merit and plaintiff has failed to demonstrate any prejudice to support its allegation of any such deprivation.

## II.

National banks may, with the approval of the Comptroller of the Currency, establish and operate branch banks if certain conditions are met. 12 U.S.C. § 36(c) provides in pertinent part:

"A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: (1) Within the limits of the city, town or village in which said association is situated, if such establishment and operation are at the time expressly authorized to State banks by the law of the State in question; and (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to location imposed by the law of the State on State banks . . ."

Plaintiff contends the Comptroller's approval and certification, pursuant to 12 U.S.C. § 36(c), of the branch bank in Ypsilanti Township violated M.C.L.A. § 487.471; M.S.A. § 23.710(171), and was contrary to the state statutory policy of "home office protection".[1]

M.C.L.A. § 487.471; M.S.A. § 23.-710(171) defines the governmental entity in which a branch bank may be established by providing in pertinent part:

"(1) With the written approval of the commissioner, any bank may establish and operate a branch or branches within a village or city other than that in which it was originally chartered if the village or city in which it is proposed to establish and operate a branch is located in the same county in which the parent bank has its principal office or, if not in the county, then within 25 miles of the parent bank or in a contiguous county at a point more than 25 miles from the parent bank, if the county has no bank. A branch shall not be established in a city or village in which a state or national bank or branch thereof is then in operation . . ."

"(2) With the written approval of the commissioner, any bank may establish and operate a branch or branches within the limits of the city or village in which the bank is located

---

1. The statutory policy of "home office protection" is contained in M.C.L.A. § 487.302; M.S.A. § 23.710(2), which provides:

"It is the policy of this state that the business of all banking organizations shall be supervised and regulated in such manner as to insure the safe and sound conduct of such business, to conserve their assets and to eliminate unsound and destructive competition among such banking organizations and thus to maintain public confidence in such business and protect the public interest and the interests of depositors, creditors and shareholders."

if the commissioner is satisfied as to the necessity for the establishment of the branch or branches and the prospects of successful operation if established."

Since the branch bank approved and certified in this case was located in a "township" rather than a "city or village", and therefore is not in violation of the literal terms of M.C.L.A. § 487.-471; M.S.A. § 23.710(171), the issue presented in this case is whether the statute should be interpreted to extend "home office protection" to banks located in townships as well as cities and villages.

Plaintiff contends it is adversely affected by literal application of the statute in that: subsection (1) of the statute which provides, *inter alia*, "A branch shall not be established in a city or village in which a state or national bank or branch thereof is in operation" excludes "home office protection" from plaintiff since it is not located in either a city or village and protected by the restrictions on branch banking afforded those two governmental entities, and; under subsection (2) of the statute which provides, *inter alia*, ". . . any bank may establish and operate a branch or branches within the limits of the city or village in which the bank is located . . ." plaintiff cannot establish an "inside" bank because it is not located in a city or village.

As is evident from the administrative proceedings in this case, the Comptroller did not interpret M.C.L.A. § 487.471; M.S.A. § 23.710(171) to include the term "township". Regardless of the construction to be given that statute in this case, however, this court would not be bound by the Comptroller's interpretation of this statute, or any other statute, when

reviewing the agency action of the Comptroller. *See,* 5 U.S.C. § 706; Warren Bank v. Camp, 396 F.2d 52 (6th Cir. 1968); State Chartered Banks In Washington v. Peoples National Bank of Washington, 291 F.Supp. 180 (W.D. Wash.1966); First National Bank of Crown Point v. Camp, 342 F.Supp. 871 (N.D.Ind.1971) aff'd, 463 F.2d 595 (7th Cir. 1972).

The court agrees the statutes applicable to this case have placed the plaintiff in an anomolous position. Although Michigan statutes provide a bank may be incorporated in a city, incorporated village or township,[2] the plain language of M.C.L.A. § 487.471; M.S.A. § 23.-710(171) provides that "home office protection" was to be afforded only to banks incorporated in cities and villages.[3]

The court is hindered in this case because the statute in question is devoid of explanation either by way of legislative history or judicial precedent. Nevertheless, the plaintiff asks this court to rewrite the statute to include the term "township". Although it is a fundamental premise of the federal judicial system that "the role of courts is ordinarily interpretive and implemental", Note, Federal Decisional Law, 77 Harv.L.Rev. 1089–1090 (1964), extensions of this sort, involving the state interest in the business of banking which is intimately connected with the general welfare of the public, Wyandotte Bank v. Banking Commissioner, *supra,* 347 Mich. at 48, 78 N.W.2d 612, should not be made by this court.

The court is troubled by the position in which the plaintiff is placed by the present statutory scheme, and it is unfortunate the State of Michigan has not developed a procedure to expedite and

2. M.C.L.A. § 487.361; M.S.A. § 23.710(61) provides in pertinent part:
"Section 61. The articles of incorporation shall specify:
(b) The county and the city, incorporated village or township where the principal office of the bank is to be located and to conduct its business."

3. In Wyandotte Bank v. Banking Commissioner, 347 Mich. 33, 78 N.W.2d 612 (1956), the Michigan Supreme Court defined the term "village" under M.C.L.A. § 487.34; M.S.A. § 23.762 (repealed), the predecessor to M.C.L.A. § 487.471; M.S.A. § 23.710(171), to conclude an "unincorporated" as well as an "incorporated" village.

resolve, through the state courts, controversies spawned by troublesome legislation.[4]

The court finds, therefore, that the decision of the Comptroller to approve and certify the branch bank of defendant National Bank was not arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. Accordingly, the plaintiff's motion for injunctive relief is denied, defendant's motion for summary judgment is granted, and this action is dismissed on the merits.

So ordered.

---

4. The Uniform Certification of Questions of Law Act, Handbook Of The National Conference Of Commissioners On Uniform State Laws (1967) at 150, if adopted, would provide a viable method for resolving the type of problem presented in this case. The Act provides in part that:

"Section 1. [Power to Answer] The [Supreme Court] may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, a United States District Court [or the highest appellate court or the intermediate appellate court of any other state], when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the [Supreme Court] [and the intermediate appellate courts] of this state."

This [act] [rule] could be adopted by the Supreme Court of Michigan under its rule making power.