**SECURITY BANK, a Michigan Corporation and Wyandotte Savings Bank, a Michigan Banking Corporation, Plaintiffs,**

and

**National Bank of Wyandotte, Intervening Plaintiff,**

v.

**James J. SAXON, as Comptroller of the Currency of the United States, and Manufacturers National Bank of Detroit, a National Banking Association, Defendants.**

**No. 26303.**

United States District Court
E. D. Michigan, S. D.

Sept. 25, 1968.

Vellmure & Mitea, by Harry F. Vellmure, and Victor T. Mitea, Allen Park, Mich., for plaintiff Security Bank.

Williams & Williams, by W. Hugh Williams, Wyandotte, Mich., for plaintiff Wyandotte Savings Bank.

Richard W. Look, Wyandotte, Mich., for intervening plaintiff National Bank of Wyandotte.

Frank G. Koury, Detroit, Mich., and Kirtley M. Thiesmeyer, Office of Comptroller of the Currency, Washington, D. C., for Comptroller of the Currency of the United States.

Bodman, Longley, Bogle, Armstrong & Dahling, by Carson C. Gruenwald, Detroit, Mich., for the Manufacturers National Bank of Detroit.

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

KEITH, District Judge.

Defendant, William B. Camp, Comptroller of the Currency of the United States, by his attorneys, move this Court to grant summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure on the grounds that the certified copies of the Comptroller's Administrative Records now before this Court, which were filed as Exhibits "A", "B", and "C", and made part and parcel thereof, establish that there is no genuine issue of material fact, and that they are entitled to judgment as a matter of law. Also, defendant, Manufacturers National Bank of Detroit, by its attorneys, move this Court for Summary Judgment on the ground that there is no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law. That motion was based on the records and files in this cause, on the comptroller's administrative file as attached to its Motion for Summary Judgment dated May 31, 1968, and on the Affidavit of Leo M. Kalota. Plaintiffs filed a brief in response thereto and the defendants filed separate reply briefs.

This is an action by a national bank and two state banks challenging the defendant comptroller's approval of a branch application by the defendant Manufacturers National Bank of Detroit. On April 5, 1965, plaintiffs stipulated that the sole issue was whether Manufacturers proposed branch located in Taylor Township was within a "Village" as that term is defined by Michigan Law. As stated in Warren Bank v. Camp, 396 F.2d 52, at page 56 (6th Cir. 1968):

"The standard of judicial review is set by the Administrative Procedures Act. The Courts determine only whether or not the action of the administrator was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law'"

In other words, the appropriate test for this Court to apply is whether the certified record shows that the comptroller acted reasonably in approving Manufacturers' application. See 5 U.S.C. Sec. 706, and Metropolitan National Bank of Farmington v. Camp, 281 F.Supp. 238, E.D.Mich. (March 1, 1968, Levin, J.). Specifically, in this case, the Court must determine whether the comptroller's finding of a village was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

It is the position of the plaintiffs that this Court cannot render a judgment upon review and analysis of the materials before it, but must bring the matter on for trial because there are matters of fact to be resolved. In Warren Bank v. Camp, supra, the Court stated at page 56 of 396 F.2d, "There appears, however, to be general agreement that a trial de novo is not required for every complaint where abuse of administrative discretion is plead. See Citizens Bank of Hattiesburg v. Camp, 387 F.2d 375 (5th Cir.), cert. denied, 391 U.S. 904, 88 S.Ct. 1652, 20 L. Ed.2d 418 (U.S. May 6, 1968); * * *".

The Michigan Supreme Court in Wyandotte Savings Bank v. State Banking Commissioner, 347 Mich. 33, at page 41, 78 N.W.2d 612, at page 617 (1956), in holding that a branch may be authorized in an unincorporated village stated:

"The word 'village' is not a technical word, or one having a peculiar meaning, but is a common word in general usage with an ancient lineage. It is merely an assemblage or community of people, a nucleus of cluster for residential and business purposes, a collective body of inhabitants, gathered together in one group."

As pointed out in Community National Bank of Pontiac v. Saxon et al., 310 F.2d 224 (6 Cir. 1962), this definition was later amplified in Bank of Dearborn v. State Banking Commissioner, 365 Mich. 567, 571, 114 N.W.2d 210, 212, as follows:

> "Its frame of reference in common usage is nebulous rather than exact, and is akin to 'vicinity,' 'neighborhood' and 'community.' * * * It is a settlement, a centralized populous area having a general common residential and business activity serving the particular area or district. It does not have to be a separate political entity or corporation. It is a 'locality' or 'area to be served.' It has been analyzed as a 'trading area' distinct from that assigned to 'municipality.'"

■ The village outlined by the defendant bank consists of a roughly triangular section in the Southeast corner of Taylor Township. This area has three natural boundaries for its triangular shape: The City of Southgate on the East, Brownstown Townships on the South, and the Northwesterly route of the proposed Fisher Freeway (Interstate Route 75) forming a hypotenuse. In addition to these natural boundaries, this area contains approximately 175 homes and has a population of 680 persons overall. The area also includes a church, a school, a market, two service stations, a grocery store, a restaurant, an envelope company, a screw products concern, a roller rink, a paint shop and a plant of the Michigan Consolidated Gas Company. These organizations employ an estimated 200 persons. A general diminishing of business development outward from the immediate vicinity of the proposed branch location shows that the area has a central core of commercial activity. The vacant land to the West of the commercial activity together with the political boundaries on the East and South, further serve to identify the area as a separate village within the township of Taylor.

Although plaintiffs strenuously argue that there are issues of fact which must be tried, they do not specifically challenge the factual data contained in the comptroller's file. A review of that file indicates that, prior to approving Manufacturers' application, the comptroller considered in depth the available information.

The facts relating to the village which are before the Court include a physical description of the village (Administrative file, Ex. A, pages 6, 15, 56–7, 63), economic statistics about the general area (pages 15–17), an aerial photograph showing the housing concentrations and geographical features, the complete report of the national bank examiner who made the investigation (Administrative file, Ex. A, pages 5–26), the evaluation and report of the Regional Comptroller (Administrative file, Ex. A, pages 27–8), favorable recommendations from five officials including the Director of Bank Organization Division and the Deputy Comptroller, and the approval of the Comptroller (Administrative file, Ex. A, pages 3–4).

In view of the rather broad definition of "village" which has been developed by the Michigan Courts, the Court finds that it was not unreasonable for the comptroller to conclude that the area in question was a "village" and that his decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in cordance with law.

Accordingly, it is ordered that the defendants' Motion for Summary Judgment be and is hereby granted.