NATIONAL BANK OF WYANDOTTE *v.*
DETROIT BANK & TRUST COMPANY

1. BANKS AND BANKING — BRANCH BANKS — ESTABLISHMENT — APPROVAL — STATE BANKING COMMISSIONER.

A bank may, with the approval of the state banking commissioner, establish a branch in a "village or city" other than the one in which it was originally chartered if, among other things, there is no other bank or branch operating in that village or city and the commissioner is satisfied of the necessity for its establishment and its prospects of successful operation (MCLA § 487.34).

2. BANKS AND BANKING—STATUTES—VILLAGE—DEFINITION.

The word "village" as used in state banking statutes is not a technical term, but denotes merely an assemblage or community of people, a nucleus or cluster for residential and business purposes, a collective body of inhabitants gathered together in one group (MCLA § 487.34).

3. BANKS AND BANKING—VILLAGE—CONCEPT—RURAL—SUBURBAN—DIFFERENTIATION.

The concept of a village has developed with the burgeoning of cities and the word village conveys a different meaning in the context of a fast-growing suburb of a major city than it does in a sparsely inhabited rural setting where the cluster constituting a village is likely to be more physically differentiated from the surrounding farm land than in a suburb.

4. BANKS AND BANKING—BRANCH BANKS—ESTABLISHMENT—NECESSITY—SUCCESS—CURRENT, FUTURE CONDITIONS.

The state banking commissioner need not limit his outlook to the time at which an application for a branch bank is pend-

REFERENCES FOR POINTS IN HEADNOTES
[1, 4–8] 10 Am Jur 2d, Banks §§ 26, 324.
[2, 3] 10 Am Jur 2d, Banks §§ 22, 26.
[3] 37 Am Jur, Municipal Corporations § 5.
[9] 5 Am Jur 2d, Appeal and Error §§ 839–845, 885.

ing; he may also consider the immediate future in determining whether an area is a village and the necessity for its establishment and its prospects for successful operation.

5. APPEAL AND ERROR—BANKS AND BANKING—BRANCH BANKS—EVIDENCE.

Circuit court, in reviewing the state banking commissioner's decision permitting defendant bank to establish a branch in a certain village, properly considered the fact that a large suburban shopping center was being built in that area, that it would soon be in operation, and that there would be a need for a branch bank in that shopping center.

6. APPEAL AND ERROR—DE NOVO—REVIEW—STATE BANKING COMMISSIONER.

A trial judge is required to conduct a *de novo* evidentiary hearing in reviewing a decision of the state banking commissioner to consider all the evidence submitted in support and in opposition to that decision, and to reach his own independent conclusions.

7. APPEAL AND ERROR—DE NOVO—REVIEW—STATE BANKING COMMISSIONER—WITNESSES—EVIDENCE.

The Court of Appeals and circuit courts, in deciding a challenge to a decision of the state banking commissioner are not limited to the at-trial statements of the commissioner.

8. APPEAL AND ERROR—DE NOVO—REVIEW—STATE BANKING COMMISSIONER—WITNESSES—EVIDENCE.

State banking commissioner's testimony that he did not consider the anticipated development of a shopping center in a certain area in deciding whether that area constituted a village, did not prevent either the trial or appellate courts from considering that fact in reviewing his decision permitting the establishment of a branch bank in the area.

9. APPEAL AND ERROR—STANDARD OF REVIEW—NONJURY CASE—FINDINGS.

The Court of Appeals reviews a trial court decision by the "clearly erroneous standard" which has been adopted for all nonjury cases and will affirm unless the appellate court is firmly convinced that the trial judge erred (GCR 1963, 517.1).

Appeal from Wayne, Edward S. Piggins, J. Submitted Division 1 May 14, 1969, at Detroit. (Docket No. 5,603.) Decided October 2, 1969.

Complaint by National Bank of Wyandotte, a national banking association, against the Detroit Bank & Trust Company, a Michigan banking corporation, and Charles D. Slay, state banking commissioner, to set aside an order of the banking commissioner permitting defendant bank to establish a branch bank in a village. Complaint dismissed. Plaintiff appeals. Affirmed.

*Brucker, McInally, Rockwell, Wetzel & Brucker* (*Richard W. Look,* of counsel), for plaintiff.

*Miller, Canfield, Paddock & Stone* (*William G. Butler, George E. Bushnell, Jr.,* and *Gilbert E. Gove,* of counsel), for defendant Detroit Bank & Trust Co.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Franklin J. Rauner,* Assistant Attorney General, for defendant banking commissioner.

Before: FITZGERALD, P. J., and LEVIN and T. M. BURNS, JJ.

LEVIN, J. The plaintiff, National Bank of Wyandotte (Wyandotte Bank), has operated a branch for a number of years near the intersection of Telegraph road and Eureka road in the southern portion of Taylor township, Wayne county, Michigan. The defendant, The Detroit Bank & Trust Company (Detroit Bank), leased space for a branch in the then-proposed Southland Shopping Center (at Pardee road on Eureka road); the site of the Detroit Bank branch is approximately 1/2 mile east on Eureka road of the Wyandotte Bank branch. The defendant, Charles D. Slay, was the commissioner of banking of this State.

The statute provides that, with the approval of the commissioner, a bank may establish a branch

in a "village or city" other than the one in which it was originally chartered if, among other criteria,

1. there is no other bank or branch then in operation in the village or city,

2. the commissioner is satisfied of the "necessity" for the establishment of the branch and "the prospects of successful operation if established."[1]

The commissioner found that the Southland Shopping Center is in a village, the geographical boundaries of which are Northline road on the north, Eureka on the south, Pardee on the west, and I–75 and Allen road on the east. The village also contains 176 houses, 3 businesses, 2 schools and 2 churches. The Wyandotte Bank is not within the geographic boundaries of this village. The commissioner also found that there was a need for the bank and that if established it would operate successfully. It was contemplated that, until the space in the shopping center is ready for occupancy, the defendant will operate a temporary branch within the village near the leased site.

The Wyandotte Bank filed a complaint with the circuit court to set aside the commissioner's determination of February 23, 1968, authorizing a charter for this branch and now appeals from a judgment dismissing its complaint.

At the trial,[2] the commissioner testified that in deciding whether this area was a village he did not take into consideration the fact that Southland Shopping Center would be built; in his opinion the area described was a village even if the shopping center is not built. He stated further that he did consider the shopping center in appraising both the

---

[1] MCLA § 487.34 (Stat Ann 1957 Rev § 23.762).

[2] The parties stipulated that the hearing on the Wyandotte Bank's motion for a preliminary injunction would be a full hearing on the merits and would serve as the trial on the merits.

need for the branch and the likelihood of its successful operation.

In dismissing the complaint the circuit judge declared:

"No shopping, trading, community or gathering centers are existent [in the village]. As of the moment the area has the appearance of a sleepy, inactive, semi-rural, open and sparsely populated section. As it now exists, it cannot support a general store much less a modern branch bank. A revolutionary change or perspective comes over the entire area however as a result of the proposed major community trading or shopping center known also as the Southland Shopping Center. This proposed center is not a nebulous, uncertain future vision. It is a definite, if not a partially existing reality. It is now in the process of construction in the extreme southwest corner of the banking village at the intersection of Pardee and Eureka Roads. Contracts for construction have been let and work is already in progress. It expects to be ready for full complete operation and use in July or the latter part of 1970, some 26 to 30 months hence. The center will house the J. L. Hudson Company, one of the world's largest department stores and some 45 to 48 additional retail establishments. Some 80% of the stores have already been leased or committed for lease. The Township of Taylor in which it is located within one week will become a legally incorporated city. The duly enacted zoning ordinance sets this area aside for community commercial purposes. The testimony indicates that the establishment of such a center attracts perimeter apartment buildings, the construction of additional private residences in close vicinity, other retail businesses and the influx of many people. Parking space has been allocated for hundreds of motor vehicles. The testimony also indicates the future definite need for the branch of a full-facility bank."

The Wyandotte Bank argues on this appeal that the foregoing and other statements of the circuit judge are tantamount to a finding that there was neither a "village" nor necessity for a branch at the time the commissioner acted on the Detroit Bank's application, that the commissioner has no authority to issue a charter for a branch bank unless the village "presently exists" and there is a "present" necessity for a branch, that it is not enough that it is "expected" that there will be a village or necessity some 24 to 36 months in the future. Accordingly, says the Wyandotte Bank, the commissioner exceeded his authority in chartering this branch. We are not persuaded.

The word "village" is not a technical term. "It is merely an assemblage or community of people, a nucleus or cluster for residential and business purposes, a collective body of inhabitants, gathered together in one group." *Wyandotte Savings Bank* v. *State Banking Commissioner* (1956), 347 Mich 33, 41.

The concept of a village (as that word is used in the Michigan financial institutions act) has developed with the burgeoning of our cities and the proliferation of shops and stores strung out along the highways and concentrated in shopping centers. The word conveys a different meaning in the context of a fast-growing suburb of a major city[3] than it does in a sparsely-inhabited rural setting where the cluster constituting a village is likely to be more physically differentiated from the surrounding farm land than in the case of a suburb. The lack of physical differentiation marking communal boundary lines characteristic of suburban areas extends also to the customers of suburban stores, who, in con-

[3] Taylor is just a few miles southwest of the southwesterly city limits of Detroit, Michigan.

trast with those of stores in a rural village, are not likely to be largely made up of persons residing or doing business in or near the village but, rather, will often include persons drawn from other suburbs, "villages," townships, and cities.

In *Bank of Dearborn* v. *State Banking Commissioner* (1962), 365 Mich 567, the existing and the proposed bank were both located on Ford road, approximately 1.1 miles apart. The intervening area was well built up. Both branch banks were at major intersections together with other stores. In holding that the two branch banks were in separate unincorporated villages,[4] the trial judge (in an opinion which the Supreme Court said "correctly" stated the law) declared (p 572) that in determining whether an area constitutes a village "economic rather than governmental, or geographical or physical boundaries are the controlling factor." He concluded that each location was a "separate trading area" and that "each has its own potential for growth."

Just as the circuit judge was found to have properly emphasized economic factors rather than governmental or geographical or physical boundaries in *Bank of Dearborn,* we think he properly stressed the economic realities in this case. Southland Shop-

---

[4] The issue in the *Bank of Dearborn Case* was different from that posed by the plaintiffs in this case; nevertheless, we think its analysis pertinent. In that case the banking commissioner's decision was challenged on the ground that the area designated as a village for the new branch bank was in reality part of the village in which the existing branch of the protesting bank was located and that, accordingly, under the statute, the commissioner could not charter another branch bank in the same village. In *American Bank & Trust Company* v. *Saxon* (CA 6, 1967), 373 F2d 283, the question presented was, likewise, whether the area designated as a village was separate and apart from the village in which the protesting bank was located.

The Wyandotte Bank has not stated a question on this appeal predicated on a claim that the area designated as a village for the branch awarded the Detroit Bank is part of the village in which the Wyandotte Bank's branch is located.

ping Center is not a figment of the imagination. It will work a fundamental change in the area. It was already under construction at the time of the trial.[5] Great sums of money had been spent; a large department store had leased space and over 80% of the balance of the complex had been rented. The plans were complete, the financing arranged. Southland is.

There is nothing in the statute which requires the commissioner to limit his outlook to "today." In evaluating current conditions he must, of necessity, include the parameter of the immediate future. He may look beyond the shopping center under construction and see a shopping center in being and the banking needs this will bring. Not to see that which is there to be seen would be unduly myopic and inconsistent with the commissioner's obligation to provide the community with a healthy banking environment.[6]

A shopping center of this size may be expected to include a banking facility. The convenience of many tenants and customers will be served by the inclusion of a bank within the center. Meeting this need required present action. The commissioner reasonably and lawfully[7] concluded that a branch bank should be in operation when the center opens, that the leasing of space for a branch, the construction of the space and the chartering of the branch need not await the completion and grand opening of the rest of the shopping center.

---

[5] The hearing was in April, 1968; the trial judge's decision was filed May 8, 1968.

[6] *Cf. Moran* v. *State Banking Commissioner* (1948), 322 Mich 230, 242. Also see *Chimney Rock National Bank of Houston* v. *State Banking Board* (Tex Civ App, 1964), 376 SW2d 595, 603.

[7] Under the statute the commissioner's order may be attacked on the ground that it is "unlawful or unreasonable." MCLA § 487.21 (Stat Ann 1957 Rev § 23.739).

There is a continuum of future events; we are not in this case required to draw a line beyond which that portended would not have sufficient tangibility to justify its consideration. In this factual setting, Southland had sufficient reality so that the circuit judge properly considered its impact as a fact supporting the commissioner's conclusion that the area was a village and there was need for a branch bank in that village.

We appreciate that the commissioner testified that he did not consider the anticipated development of Southland Shopping Center in deciding whether the designated area constitutes a village, but only on the questions of whether there was necessity and the prospects of successful operation, and that the trial judge, and we in affirming, have given considerable weight to Southland Shopping Center in our review of the correctness of the commissioner's conclusions on both questions. Neither the trial judge nor we are, however, limited by the commissioner's at-trial statements in deciding this challenge of his decision. While the ultimate issue to be decided is whether the commissioner's action was unlawful or unreasonable (see footnote 7), in making that decision the trial judge is required to conduct a *de novo* evidentiary hearing, to consider all the evidence submitted in support of and in opposition to the commissioner's decision and to reach his own independent conclusion.

"Once in equity the parties are entitled to the application of equitable as well as legal principles. The chancellor may indeed, assuming the proofs taken fairly support him, substitute his judgment for that of the commissioner." *Southgate Bank* v. *Banking Commissioner* (1968), 380 Mich 282, 286.[8]

[8] In this case the court traced the development of the exceptional statutory provision (MCLA § 487.21 [Stat Ann 1957 Rev § 23.739])

The fact that on May 13, 1968, Taylor township became the city of Taylor, thus withdrawing the commissioner's power to authorize a branch bank,[9] has not been made an issue in this case; the plaintiff's statement of "questions involved" does not challenge the chartering of the defendant's branch on that ground. That fact serves merely to emphasize the importance of the final outcome of the case to the parties and to those who do business at the Southland Shopping Center.

We review the trial judge's decision by the clearly erroneous standard, the standard historically applied in reviewing chancery appeals and which now has been adopted for all cases where the trial judge sits without a jury.[10] We cannot say that we are left with the definite and firm conviction that the trial judge erred and, accordingly, affirm.

Costs to defendants.

All concurred.

---

for review of orders of the banking commissioner (which states that review is obtained by filing a bill in equity) and contrasted this provision with the more limited judicial review of administrative orders of most officers and agencies.

[9] As previously mentioned, under the statute (footnote 1) the commissioner may not charter a branch bank in a city where there is a bank or branch in operation. Plaintiff operated a bank in Taylor township; there were also other branch banks in the township.

[10] GCR 1963, 517.1; 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 596.