The **FIRST NATIONAL BANK OF CROWN POINT and The Commercial Bank of Crown Point**

v.

**William B. CAMP and Mercantile National Bank of Indiana.**

**Civ. No. 70 H 147.**

United States District Court,
N. D. Indiana,
Hammond Division.

May 10, 1971.

Fred G. Donnersberger, Hammond, Ind., William Carroll, Crown Point, Ind., for plaintiffs.

Timothy P. Galvin, Sr. and Patrick Galvin, Hammond, Ind., for Mercantile Nat. Bank of Ind.

W. J. Glendening, U. S. Atty., Frank Kimbrough and John Austin, Asst. U. S. Attys., for William B. Camp.

## MEMORANDUM

BEAMER, District Judge.

This case arises out of an action by the Comptroller of the Currency (hereinafter Comptroller) granting an application made by the Mercantile National Bank (hereinafter Mercantile) for a certificate of authority which would permit it to establish a branch bank at the intersection of 95th Avenue and Taft Street in Ross Township, Lake County, Indiana. The plaintiffs have filed suit pursuant to 28 U.S.C.A. § 2201 (the declaratory judgment statute) to have the

conduct of the defendants declared illegal as violative of the National Banking Act and branch banking laws of the State of Indiana, and, to effectuate that declaration, issue a preliminary and permanent injunction prohibiting the defendants from establishing the proposed branch bank.

■ The Comptroller has filed a motion to dismiss on the ground that the complaint does not contain "a short and plain statement of the grounds upon which the court's jurisdiction depends" required by Rule 8(a) (1) of the Federal Rules of Civil Procedure. It is true, as the Comptroller contends, that none of the statutes alleged as bases for the court's jurisdiction are jurisdictional statutes. Under ordinary circumstances, the Court would either dismiss the complaint and permit the plaintiffs to refile, or permit amendment to the complaint to properly allege the jurisdictional statute. However, it is apparent from the face of the complaint that the appropriate jurisdictional statute is 28 U.S.C.A. § 1331, and that upon a refiling or amendment, the only additional allegation which would need to be made for technical compliance with Rule 8(a) (1) would be that of the statute. While better practice would have been to plead the statute, the Court is of the opinion that sufficient facts have been alleged to invoke jurisdiction. The motion to dismiss should be denied.

Each defendant has filed a motion for summary judgment. The complaint here is for review of an action taken by an administrative agency. As such, the scope of the Court's authority to review the action is limited by statute as follows:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

> (1) compel agency action unlawfully withheld or unreasonably delayed; and

> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—

> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

> (B) contrary to constitutional right, power, privilege, or immunity;

> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

> (D) without observance of procedure required by law;

> (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

> (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error. 5 U.S.C.A. § 706

The Mercantile applied to the Comptroller for approval to establish the branch in question under the provisions of 12 U.S.C.A. § 36(c), which provides in pertinent part as follows:

> (c) A national banking association may, with the approval of the Comptroller of the Currency, establish and operate new branches: . . . (2) at any point within the State in which said association is situated, if such establishment and operation are at the time authorized to State banks by the statute law of the State in question by language specifically granting such authority affirmatively and not merely by implication or recognition, and subject to the restrictions as to loca-

tion imposed by the law of the State on State banks. . . .

It is clear that a national banking association may establish a branch bank in a state which permits branch banking to its own banks, to the extent that state banks may do so. First National Bank of Logan v. Walker Bank & Trust Co., 385 U.S. 252, 87 S.Ct. 492, 17 L.Ed.2d 343 (1966). Thus, any legal restriction upon the right of Mercantile to establish a branch bank must be found in the laws of the State of Indiana.

The relevant Indiana statute is Burns § 18–1707, IC 1971, 28–1–17–1, which provides in pertinent part as follows:

> In all counties having a population of less than five hundred thousand [500,000] inhabitants, according to the last preceding decennial United States census, or in counties having three [3] or more cities of the second class, . . . any bank or trust company may open or establish a branch bank in any city or town within the limits of the county in which the principal office of such bank or trust company is located, if there is no bank or trust company located in such city or town. . . .

■ The words "any bank or trust company may open or establish a branch bank" in the Indiana statute constitute the specific grant of authority required by Section 36(c) before an application to establish a branch bank may be approved by the Comptroller; and the proposition that Indiana law permits branch banking is not in controversy. What is in controversy is, (1) whether the location selected by Mercantile is within a city or town as those terms are used in the Indiana statute, and, if it is determined that it is, (2) whether it is then within a city or town in which a bank or trust company is already established.

Section 706 requires the Court to interpret the applicable statutory provisions, and after so doing, to set aside agency action which is not in accordance with law. Turning first to whether the Comptroller correctly interpreted the statutory requirement of a "city or town", it is this Court's opinion that he did so.

The parties have not cited, and the Court has been unable to find, any Indiana cases which define the words "city or town" for purposes of Burns § 18–1707. We are referred to Opinion No. 33 of the Attorney General of Indiana issued on May 8, 1953, which indicates that the words should be given their ordinary and usual meaning. Consequently, the Attorney General was of the opinion that "the term 'town' as used in the statute in question includes an unincorporated as well as an incorporated town." It is undisputed that the Indiana Department of Financial Institutions has followed this interpretation since that time, and is presently doing so, with regard to the establishment of branch banks by state banking institutions.

The state of Michigan has a branch banking statute which is similar to that being interpreted here. Instead of the word "town," however, it uses the word "village." Michigan courts have had several opportunities to construe and apply that statute, and many of those decisions have been cited here.[1] They have

---

1. Wyandotte Savings Bank v. Eveland, 347 Mich. 33, 78 N.W.2d 612 (1956) ; National Bank of Wyandotte v. Detroit Bank & Trust Co., 19 Mich.App. 439, 172 N.W.2d 883 (1969) ; Bank of Dearborn v. State Banking Comm'r., 365 Mich. 567, 114 N.W.2d 210 (1962) ; Commercial State Bank of Roseville v. Gidney, 174 F.Supp. 770 (D.D.C.1959) ; Peoples Bank-Trenton v. Saxon, 244 F.Supp. 389 (E.D.Mich., 1965) ; Security Bank v. Saxon, 298 F. Supp. 991 (E.D.Mich., 1968) ; Community National Bank of Pontiac v. Saxon, 310 F.2d 224 (6th Cir. 1962) ; American Bank & Trust Co. v. Saxon, 373 F.2d 283 (6th Cir. 1967) ; National Lumberman's Bank & Trust Co. v. Camp, Civil No. 6179, W.D.Mich., Unreported opinion by Kent, Chief Judge, May 4, 1970, attached as Appendix A to Comptroller's Memorandum in Support of his Motion to Dismiss.

long worked with the definition of "village" set out in Wyandotte Savings Bank v. Eveland, 347 Mich. 33, 78 N.W. 2d 612, at 617:

> The word "village" is not a technical word, or one having a peculiar meaning, but is a common word in general usage with an ancient lineage. It is merely an assemblage or community of people, a nucleus or cluster for residential and business purposes, a collective body of inhabitants, gathered together in one group.

This definition is substantially in accord with the opinion of the Attorney General of Indiana referred to above, and the subsequent interpretive application of it to branch banking in Indiana.

Both plaintiffs have availed themselves of the benefits of this interpretation in the past. The Commercial Bank of Crown Point has established a branch office in Independence Hill, which is an unincorporated community located at or near the intersection of U. S. 30 and Indiana State Road 55 (also known as Taft Street) in Ross Township. The First National Bank of Crown Point has established a branch office at 61st Avenue and Broadway in an unincorporated area of Ross Township located approximately 1 mile from the city limits of Gary.

We think that if the Indiana courts were faced with the question presented here, they would find, as we do, that the words "city or town" as used in that portion of Burns § 18–1707 which deals with the establishment of branch banks, include an unincorporated as well as an incorporated community.

The next question to be determined is whether the Comptroller's action in finding that the proposed location was within a city or town as a matter of fact was arbitrary, capricious, or an abuse of discretion. This Court finds that it was not.

The Comptroller has submitted to the Court his entire administrative file on the matter, and the Court has before it everything the Comptroller had before

him at the time he approved the 1970 application, including the 1967 application and the material which was submitted to the Comptroller at that time. Mercantile's 1967 application to establish a branch bank at essentially the same location was denied.

The plaintiffs filed objections to the 1967 application on the basis that the physical characteristics of the location and surrounding territory were such that it could not be found to be a city or town as a matter of fact. At that time, they submitted that the proper statutory interpretation of "city or town" in Indiana was that adopted by the Attorney General in his 1953 opinion. No other legal interpretation of the statutory requirement was submitted to the Comptroller. It is apparent from the administrative file that this interpretation was adopted in 1967, and that the application was denied on the ground that the physical location involved did not possess sufficient viability to be considered a city or town within the applicable statutory provisions.

This conclusion is buttressed by an examination and comparison of the material contained in the 1967 and 1970 administrative files. The objections submitted by the plaintiffs to the 1970 application are substantially the same as those made in 1967. The position of Mercantile is unchanged. The only material change is in the physical development of the territory surrounding the proposed location. The only real determination the Comptroller had to make was whether the area had developed to the point where it could be considered a city or town.

One of the factors upon which the Comptroller placed great weight was the proposed Lake County Courthouse complex. In 1967, litigation was pending and it could not be said with certainty that the complex would become a reality. In 1970, litigation had been concluded, a statute was in effect permitting extraterritorial location of a county courthouse within 2 miles of the county seat town, and a $15 million bond issue to fi-

nance the construction of the complex had been sold. The Comptroller looks for the courthouse complex to provide a nucleus for the establishment of new service, business and commercial establishments, in addition to the business activity which it will generate per se.

At the time the Comptroller ruled on the 1970 application there were two major subdivisions immediately adjacent to the proposed location. In 1967, Wirtz Crown Heights was a 27 unit single family residential development, of which 20 units were occupied. In 1970, there were 61 residential single family units constructed or under construction, with almost full occupancy, and more planned. Fountain Ridge Addition was not considered at all in the 1967 application. In 1970 it had 86 residential single family units constructed or under construction, with almost full occupancy. It also had two 16-unit apartment buildings under construction. Proposed further development was anticipated in the immediate future. The Deanbe Corporation had advised the Comptroller that it had purchased 215 acres of land southeast of the proposed bank location (south of Fountain Ridge Addition) which is proposed to develop into residential housing.

■■ The population growth of Ross Township has been substantial in the last 10 years, significantly so since 1967. Much of it represents movement from the northern cities of Gary and Hammond to the southern part of Lake County. Many of these people retain their occupations in the industrial complex to the north, and commute to their homes. Consequently, significant development of independent industrial and commercial centers has not occurred. While development of the area here is not as far advanced as was development of the area at 61st and Broadway when First National established its branch, it appears to be of a similar nature. In making his decision, the Comptroller is not restricted absolutely to the physical facts as they exist on the the date of application, but may take into considera-

tion planned development of the area which would affect its character in the immediate future. It is apparent that he has done so here. Under the circumstances of this case, the Court is of the opinion that the Comptroller's action in determining, as a matter of fact, that the area within which Mercantile wished to establish a branch bank was a town within the meaning of the Indiana statute was not arbitrary, capricious, or an abuse of discretion.

The next inquiry is whether the location chosen by Mercantile is within a city or town in which a bank or trust company is already established. If this be true, establishment of the branch bank would be in violation of Burns § 18–1707 and therefore unlawful within the provisions of 5 U.S.C.A. § 706(2) (A).

■ The plaintiffs contend, and did so in their objections to the 1967 and 1970 applications, that for purposes of "home office protection," the words "city or town" in the statute refer to the economic city. This construction contemplates that these words be given the same interpretation each time they appear in the statute, without regard to the context in which they appear. This contention is unsound. That portion of the statute which confers "home office protection" is a restriction upon the right of a bank to establish a branch. As such, the language used should be narrowly construed.

■ Furthermore, Burns § 18–1708 IC 1971, 28–1–17–3 provides criminal penalties for violation of Burns § 18–1707. In order to effectively apply the statute, one has to be able to determine the boundaries of a city or town with precision. If the interpretation urged by the plaintiffs were to be adopted, then theoretically a bank could be penalized under Burns § 18–1708 for establishing a branch bank pursuant to authority issued either by the Comptroller of the Currency or the Indiana Department of Financial Institutions, if the court in which such a prosecution was

brought determined that the branch bank location was within the economic environs of a city or town in which a bank or trust company was already located. Such a result would be anomalous. It is this Court's opinion that the words "city or town" as used in that portion of Burns § 18–1707 which restricts the right of a bank to establish a branch, mean the corporate city or town in which a bank or trust company is already established.

■ Plaintiffs have proposed a theory of de facto annexation. They cite Burns § 26–411 and § 26–413 IC 1971, 17–1–23–1, 17–1–23–3 as support for the proposition that the city limits of Crown Point have been extended for a 2 mile radius beyond the established corporate limits. We do not so interpret the statutes. Burns § 26–411 permits the physical relocation of a county courthouse from a location within the corporate limits of the county seat town to county-owned land which is within a 2 mile radius of the corporate limits of that town. Burns § 26–413 gives to transactions made in a courthouse so relocated the same effect they would have had if they had been made in a courthouse located within the corporate limits of a county seat town. They do not purport to do more than they say, and the Court is of the opinion that reliance upon them to establish a theory of de facto annexation is misplaced.

Plaintiffs presented to the Comptroller a copy of a contract entered into by the City of Crown Point and Henry J. Wirtz and Frances L. Wirtz (owners of the property which is now referred to as Wirtz Crown Heights) by which "the developers of Wirtz Crown Heights undertook and agreed to develop all of their property according to the Subdivision Control and Zoning Ordinances of the City of Crown Point, and to seek approval of the Plan Commission of Crown Point for all developments,. in exchange for which the City of Crown Point has agreed to furnish water and sewer services to the development of Wirtz Crown Heights. The contract, and the private covenants which are tied into the title of each residential lot, provide for a waiver of any rights to object to annexation of the area by the City of Crown Point." Exhibit "A", p. 58. Representation of a similar contract executed by the developers of Fountain Ridge Addition was made to the Comptroller, although a copy of the contract was not submitted to him. Plaintiffs contend that by virtue of these contracts, the area had become an integral part of the City of Crown Point, and thus within the corporate city.

Burns § 48–701 provides in part:

The mayor and the proper administrative board with the ratification and approval of the common council shall also have the power, *in lieu of annexing any such contiguous territory or in cases not involving any proposed annexation of territory*, to enter into contracts with the owners or lessees of designated property in the vicinity of the city, whether within or without county in which the city is located, providing for the payment or contribution of money to the city to be used for such municipal or public purposes as may be specified in such contract, whether such payments are related to or in consideration of municipal services or benefits already received, or to be received under such contract or otherwise, by such property owners or lessees, or whether such payments are in lieu of taxes that might be levied upon annexation of such designated property, or whether such payments are wholly unrelated to municipal services or benefits to or potential tax impositions upon such designated property. (Emphasis added.)

■ The statute makes it clear that a contract executed by a city with adjacent landowners to provide municipal services does not have the effect of annexing the territory involved, but on the contrary, is in lieu of annexation.

Burns § 48–701 also provides in part as follows:

The common council shall have power, by ordinance, to declare and define the entire corporate boundaries of such city, and such ordinances, properly certified, shall be conclusive evidence, in any court or proceeding, of the boundaries of such city, . . . .

The rest of the section, and following sections, set forth the procedure by which a city or town may annex territory. The statute explicitly states that corporate boundaries are defined by ordinance, which, properly certified, shall be *conclusive evidence* of the corporate boundaries. The Court is of the opinion that if territory has not been annexed pursuant to the appropriate statutory provisions, and is thus not within the corporate boundaries as defined by the ordinance, it is not part of the corporate town.

 Plaintiffs admit that the area in question has not been statutorily annexed by the City of Crown Point, and that it is not within the corporate limits. Since the Court has already held that the words "city or town" as used in the restrictive portion of Burns § 18–1707, mean the corporate city or town, it must hold that the location selected by Mercantile is not in a city or town in which a bank or trust company is already located. The Comptroller's decision is lawful, and cannot be set aside under § 706(2) (A).

 The Comptroller has observed procedure required by law. The plaintiffs were advised of their right to a formal hearing; they did not request one. They did request, and were given, an informal conference. The Comptroller has long used the practice of informal conferences to assist him in his determinations. He is not required, as a matter of law, to have a formal hearing. First National Bank of Smithfield v. Saxon, 352 F.2d 267 (4th Cir.1965), aff'd. sub nom. First National Bank of Logan v. Walker Bank & Trust Co., supra; Webster Groves Trust Co. v. Saxon, 370 F.2d 381 (8th Cir.1966); Citizens Bank of Hattiesburg v. Camp, 387 F.2d 375 (5th Cir.1967). Plaintiffs were given every opportunity to present their views on this matter. The Comptroller's action may not be set aside under § 706(2) (D).

 The substantial evidence requirement of § 706(2) (E) is not applicable in this case. The agency action is not subject to Sections 556 and 557 or Title 5, nor is it reviewed on the record of an agency hearing provided by statute. There is no statute which requires that a hearing be held by the Comptroller.

 Application of § 706(2) (F) does not help the plaintiffs either. The statute does not provide for a trial de novo by the Court. The cases which the Court has examined in which a trial de novo was held involved a situation in which either the Comptroller had refused to submit part or all of his admininstrative file to the reviewing court, so that the court did not have sufficient facts before it upon which to determine whether the Comptroller's action was arbitrary, capricious, or an abuse of discretion, or, the record which was submitted to the Court showed that the procedures used by the Comptroller were unilateral and arbitrary. See Bank of Dearborn v. Saxon, 244 F.Supp. 394 (E.D.Mich., 1965); Bank of Haw River v. Saxon, 257 F.Supp. 74 (M.D. N.C., 1966); and Peoples Bank of Trenton v. Saxon, 373 F.Supp. 185 (6th Cir. 1967). Neither of these situations is present here.

 Cases in which a request for a trial de novo was denied indicate that a prima facie showing of an abuse of discretion by the Comptroller is required before a trial de novo will be granted. See Warren Bank v. Camp, 396 F.2d 52 (6th Cir. 1968) and Ramapo Bank v. Camp, 425 F.2d 333 (3rd Cir. 1970). No such showing has been made here, and plaintiffs are not entitled to a trial de novo.

■ It is well settled, as a matter of administrative law, that the reviewing court is limited to consideration of the record presented to the administrative agency in making its determination on the agency action. Consequently, plaintiffs' motion to file a supplemental affidavit based on newly discovered evidence should be denied. Plaintiffs' motion to defer ruling on the Comptroller's motions is predicated upon an ability to submit evidence other than that which was submitted to the Comptroller to the Court. It should be denied.

It appearing that the defendants are entitled to judgment as a matter of law, their motions for summary judgment are therefore granted.