UNION BANK & TRUST COMPANY v FIRST MICHIGAN BANK &
TRUST COMPANY

OPINION OF THE COURT

1. ADMINISTRATIVE LAW—APPEAL AND ERROR—STANDARD OF REVIEW.

The judicial standard for assessing the validity of an administrative decision is whether or not the decision was supported by competent, material, and substantial evidence on the whole record (Const 1963, art 6, § 28).

2. BANKS AND BANKING—BRANCH BANK—"VILLAGE"—DEFINITION.

The term "village" contained in the branch-banking statute is defined as an unincorporated assemblage or community of people gathered together in a nucleus or cluster for residential or business purposes (MCLA 487.471[1]).

3. BANKS AND BANKING—BRANCH BANK—"VILLAGE"—ECONOMIC CRITERIA.

Economic criteria, rather than governmental, geographical, or physical boundaries, are controlling in delineating a village for branch-banking purposes.

4. BANKS AND BANKING—ESTABLISHMENT OF BRANCH BANK—STATUTORY REQUIREMENTS—SUFFICIENCY OF EVIDENCE.

The Commissioner of the Financial Institutions Bureau did not err in finding that an applicant had met the statutory requirements to establish a branch bank where the applicant not only presented evidence to define the area to be contained within the banking village by reference to physical boundaries, but also presented commercial and economic criteria to define its banking village (MCLA 487.471[1]).

5. ADMINISTRATIVE LAW—APPEAL AND ERROR—FINDINGS OF FACT.

The Court of Appeals will not substitute its opinion for that of an

REFERENCES FOR POINTS IN HEADNOTES

[1, 5, 6] 2 Am Jur 2d, Administrative Law § 755 et seq.
[2-4, 7, 8] 10 Am Jur 2d, Banks § 324 et seq.
  56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 8.
[6] 2 Am Jur 2d, Administrative Law § 619.

administrative agency where there is competent, material, and substantial evidence on the whole record to support the agency's findings.

DISSENT BY BORRADAILE, J.

6. ADMINISTRATIVE LAW—APPEAL AND ERROR—STANDARD OF REVIEW.

*The standard of review of administrative agency actions is not the "clearly erroneous" test, but rather whether an agency has abused its discretion by arbitrary action.*

7. BANKS AND BANKING—BRANCH BANK—"VILLAGE"—COMMISSIONER OF FINANCIAL INSTITUTIONS BUREAU.

*The Commissioner of the Financial Institutions Bureau is not authorized by law to determine whether a "village" for branch-banking purposes exists without specifically determining if other branches are in operation in "villages" which in any way surround or infringe upon the "village" proposed by an applicant desiring to establish a branch bank.*

8. BANKS AND BANKING—BRANCH BANK—"VILLAGE"—FINDINGS OF FACT—SUFFICIENCY.

*The Commissioner of the Financial Institutions Bureau erred in granting an application to establish a branch bank where his findings of fact dealt solely with the area delineated as the applicant's branch-banking village without determining whether the "villages" of the applicant and objecting banks were the same, because economic factors are controlling upon the existence of a branch-banking village, and the failure to determine whether the branch-banking villages were the same indicated insufficient consideration of the economic factors.*

Appeal from Kent, Stuart Hoffius, J. Submitted Division 3 April 4, 1972, at Grand Rapids. (Docket No. 12300.) Decided December 6, 1972. Leave to appeal denied, 389 Mich 778.

An application by First Michigan Bank & Trust Company to establish a branch bank was granted by the Department of Commerce, Financial Institutions Bureau. Union Bank & Trust Company petitioned in circuit court for review of the decision. Reversed. Applicant appeals. Judgment of the circuit court reversed, and decision of the Commis-

sioner of the Financial Institutions Bureau affirmed.

*Varnum, Riddering, Wierengo & Christenson* (by *Clifford C. Christenson* and *Jon F. DeWitt),* for appellee, Union Bank & Trust Company.

*Lokker, Boter, Dalman & Murphy (Foster, Lindemer, Swift & Collins,* of counsel), for appellant, First Michigan Bank & Trust Company.

Before: T. M. BURNS, P. J., and HOLBROOK and BORRADAILE,* JJ.

T. M. BURNS, P. J. In August, 1969, the First Michigan Bank & Trust Company, a Michigan banking corporation with its principal office in Zeeland, Michigan (hereinafter denominated applicant) filed an application with the Michigan Department of Commerce, Financial Institutions Bureau, requesting permission to establish a branch bank in Georgetown Township, Ottawa County, Michigan. The applicant proposed to locate the branch bank in a shopping center within the unincorporated community of Jenison.

Notice of the applicant's request to open a new branch was given to other area banks, and objections to the proposed branch were received from the Union Bank & Trust Company of Grand Rapids (hereinafter referred to as objector), and from the State Bank of Michigan at Cooperstown. The objector presently operates a branch bank in Georgetown Township approximately six-tenths of a mile east of the applicant's proposed location.

A full adversary-type hearing was held on the matter before the Commissioner of Financial Insti-

---

* Former circuit judge and now probate judge, sitting on the Court of Appeals by assignment.

tutions on February 16, 17, and 26, 1970.[1] The applicant and both objecting banks appeared, produced witnesses, introduced exhibits, and offered testimony in support of their respective positions. On June 19, 1970, a written opinion filed by the commissioner found that the statutory requirements[2] for the establishment of the applicant's branch bank had been met since:

"[t]he proposed branch site is within a village within 25 miles of applicant's parent bank in which no other state or national bank or branch thereof, is in operation * * * ."

Subsequently, on June 26, 1970, the objector filed a petition in Kent County Circuit Court for a review of the commissioner's decision. This petition averred that the commissioner erred in approving the applicant's request, inasmuch as the proposed branch bank would be in a "village" where the objector already had a branch bank in operation. The objector also maintained that the commissioner's decision was not supported by competent, material, and substantial evidence on the whole record. Thereafter the circuit court in an opinion dated July 2, 1971, determined that there was not substantial evidence to support the commissioner's finding of a separate and distinct village for the establishment of the applicant's branch bank. Consequently, a judgment reversing the commissioner was entered July 23, 1971, and applicant appeals therefrom as of right.

The judicial yardstick for assessing the validity of an administrative decision is whether or not the

---

[1] The hearing was held pursuant to MCLA 487.330; MSA 23.710(30).

[2] MCLA 487.471(1); MSA 23.710(171)(1). The other requirements of the statute as to the sufficiency of the applicant's capital and surplus, necessity for the proposed branch, and prospects of successful operation if established are not in issue here.

decision was supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; *Viculin v Department of Civil Service,* 386 Mich 375 (1971); *Diepenhorst v General Electric Co,* 29 Mich App 651 (1971).

Therefore, we are confronted with the identical question which faced the circuit court, namely, whether there was competent, material, and substantial evidence on the whole record to support the commissioner's finding that applicant's proposed branch bank would be located in a "village" in which no other state or national bank or branch was in operation.

The term "village" contained in the branch-banking statute[3] has been defined as an unincorporated assemblage or community of people gathered together in a nucleus or cluster for residential and business purposes. *Wyandotte Savings Bank v State Banking Commissioner,* 347 Mich 33 (1956). In addition, the Michigan Supreme Court indicated that in delineating a village for branch-banking purposes economic criteria rather than governmental, geographical, or physical boundaries would be controlling. *Bank of Dearborn v State Banking Commissioner,* 365 Mich 567 (1962).

In an attempt to impugn the competency and materiality of the applicant's evidence, the objector asserts that the applicant was preoccupied solely with physical factors and not the requisite economic factors in defining its banking village. A close examination of the testimony before the commissioner, however, belies this contention and indicates that the applicant did indeed consider economic and commercial factors in defining the banking village.

The applicant's president, for example, testified

---

[3] *Ibid.*

that among other things population growth, shifts in trading patterns, the amount of business the applicant transacted in the area, and the number of residences in the area were taken into consideration before submitting the application for the branch bank to the Financial Institutions Bureau.

Next, the planning director for Kent County testified in terms of neighborhood planning units used by regional planners in their planning activities. He stated that in his opinion the applicant's proposed branch bank and the objector's bank would be in separate planning units. On direct examination, he was asked what indicia were used in defining a neighborhood planning unit and the following dialogue developed:

"*Q.* What factors do you consider in determining what constitutes a neighborhood planning unit?

"*A.* In looking at a neighborhood planning unit, we look for relative compactness of size, definition of the area by major arterial streets or other physical factors, homogeneity in terms of land use. * * *

"*Q.* Do you also consider *commercial activity?*

"*A.* We consider these as ancillary to and serving the neighborhood planning units.

"*Q. And it is a factor, as to the type of commercial activity, a factor that you consider?*

"*A. Yes * * * we've tried to effect shopping areas that meet the demands and needs of the community."* (Emphasis supplied.)

Next the applicant called Dr. Carl Bajema, a long-time resident of the Jenison area, to the stand. During cross-examination, the following colloquy occurred between the witness and objector's counsel.

"*Q.* What does it [the unincorporated village of Jenison] mean to you * * * ?

"*A.* Well, Jenison means what is covered by the post

office, because I have students who say they live in
Jenison who I, according to my definition, would put
them in Allendale, but they happen to be in George-
town Township. To my, my own personal use, I prefer
the term Georgetown.

"*Q. But Jenison, to you, today, means basically what
is covered by the post office district; is that fair? Is that
what Jenison means to you?*

"*A.* Well, if you want to talk about something amorp-
hous and having to pin it down, *I really can't say that,*
because Jenison *sometimes means a school district;* in
terms of taxes, *it means where a shopping center* has
been constructed and you've given the name of 'Jenison
Plaza' * * * ." (Emphasis supplied.)

Although the applicant used streets and the like
to define the area covered by the banking village,
an examination of the record discloses that for the
most part they were used as a matter of conve-
nience for defining the perimeters of the village
after an analysis of the economic factors within
the territory bounded by these physical markers
had been completed. It is neither impermissible
nor unusual to define the area contained within a
banking village by reference to physical bounda-
ries. See, for example, *National Bank of Wyan-
dotte v Detroit Bank and Trust Co,* 19 Mich App
439 (1969); *Wyandotte Savings Bank v State Bank-
ing Commissioner, supra.*

We hold, therefore, that since the applicant used
commercial and economic criteria to define its
banking village, the evidence presented by the
applicant was both competent and material.

A proper review, however, necessitates a com-
parison of the applicant's banking-village evidence
with that produced by the objector.

Three Georgetown Township officers[4] testified for
the objector via deposition. All opined that given

---

[4] The officers were the township's supervisor, clerk, and treasurer.

the definition of "village" as set forth in *Bank of Dearborn v State Banking Commissioner, supra,* the objector's present branch bank and the applicant's proposed branch bank would be in the same village.

Finally, a professor of urban planning from Michigan State University who had assisted in preparing the Georgetown Township development plan and the township's zoning ordinance was also of the opinion that the objector and applicant's proposed branch would be in the same community trading area.

After comparing the testimony and the numerous exhibits presented by the parties, we conclude that the evidence, albeit conflicting, was competent, material, and substantial on the whole record to support the commissioner's finding that the applicant's proposed branch bank would be located in a "village" wherein no other state or national bank or branch was in operation.

Admittedly, the question is close and although had we been sitting as the commissioner we may have reached a different result, we will not substitute our opinion for that of an administrative agency where, as here, there is the requisite evidence to support the administrative decision. *Saksey's Lounge, Inc v Liquor Control Commission,* 29 Mich App 656 (1971).

Accordingly, the commissioner's decision permitting the establishment of the applicant's branch bank is affirmed and the circuit court's decision overruling the commissioner is reversed.

Holbrook, J., concurred.

Borradaile, J. *(dissenting).* First Michigan Bank & Trust Company, a Michigan banking corporation with its principal offices at Zeeland, Ottawa

County, Michigan, filed an application, as amended, with the Michigan Department of Commerce, Financial Institutions Bureau, requesting permission to establish a branch bank in Georgetown Township, Ottawa County, Michigan.

Objections to the proposed branch were received from the Union Bank and Trust Company of Grand Rapids and The State Bank of Michigan at Coopersville. A hearing was held before the Commissioner of the Michigan Financial Institutions Bureau. The commissioner in a written opinion approved applicant's request to operate a branch bank. Union Bank filed a petition for review of the commissioner's decision in the Kent County Circuit Court. The circuit court judge in a written opinion reversed the commissioner's decision. Applicant appeals as of right from the judgment of the circuit court.

Applicant defined the unincorporated village within which it proposed to locate as an area in Georgetown Township bounded on the west by 12th Avenue extended north, bounded on the south by the C & O Railroad, bounded on the east by School Street, and bounded on the north by Cottonwood Drive. Georgetown Township, located in the easterly part of Ottawa County, lies approximately six miles southwest of the City of Grand Rapids and is adjacent to the Cities of Grandville and Wyoming, which lie generally to the east.

Applicant proposed to locate its branch in a regional shopping center which lies just west of School Street. The "village" applicant proposed to serve consists of a residential area west of the shopping center.

Union Bank presently operates a branch at 7451 Union Street in Georgetown Township. This branch is approximately six-tenths of a mile east

of applicant's proposed location. Union Bank presented evidence which indicated that the "village" applicant's bank would serve is a part of the same economic community which is now served by Union Bank. Applicant maintained that the area was distinct from that serviced by Union Bank. Old Kent Bank and Trust Company had also attempted to establish a branch bank 1.8 miles west of applicant's proposed location in order to service this same area. The Commissioner of Financial Institutions had approved Old Kent's request prior to approval of applicant's request. However, because of an injunction issued by a Federal court, the branch bank was not in operation at the time of this hearing before the commissioner.

In his written opinion approving applicant's request for a branch bank, the commissioner determined that the requirement of MCLA 487.471(1); MSA 23.710(171)(1), had been met in that:

"(1) The proposed branch site is within a village within 25 miles of applicant's parent bank in which no other state or national bank or branch thereof, is in operation; and

"(2) He is satisfied as to the sufficiency of capital and surplus of the First Michigan Bank & Trust Company and as to the necessity for the establishment of such branch and the prospects of successful operation if established."

In reversing the commissioner, the Kent County Circuit Court found that:

"[t]he applicant has not shown that there is a separate village dividing its area from that being served by Union Bank and Trust Company."

The judicial review of administrative decisions is constitutionally delineated by Const 1963, art 6, § 28, as follows:

"All final decisions, findings, rulings and orders of any administrative officer or agency existing under the Constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are *authorized by law;* and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record." (Emphasis supplied.)

The specific section of the Banking Code of 1969 which controls the case is § 171(1) (MCLA 487.471[1]; MSA 23.710[171][1]), which provides as follows:

"With the written approval of the commissioner, any bank may establish and operate a branch or branches within a village or city other than that in which it was originally chartered if the village or city in which it is proposed to establish and operate a branch is located in the same county in which the parent bank has its principal office or, if not in the county, then within 25 miles of the parent bank or in a contiguous county at a point more than 25 miles from the parent bank, if the county has no bank. *A branch shall not be established in a city or village in which a state or national bank or branch thereof is then in operation.* The commissioner shall not grant such approval unless he is satisfied as to the sufficiency of the capital and surplus of the bank, the necessity for the establishment of such branch or branches and the prospects of successful operation if established." (Emphasis supplied.)

Though the briefs raise other questions and testimony covered other areas, the emphasis of counsel for applicant and the objectors was as to whether a "village" existed in which no other state or national bank or branch thereof is located.

Counsel for applicant during examination of its witness Den Herder said that objector Union Bank

was not in applicant's village but where its village was located they didn't know. Witness Den Herder said a bank at 20th and Baldwin, the pending branch for Old Kent, was not considered in determining deposit growth.

Applicant's witness Fendt said that the areas east and west of the east boundary line of applicant's "village" could be divided into planning units but that would not mean that each of them was economically independent or governmentally independent from each other.

Fendt, who had been director of the Kent-Ottawa Regional Planning Commission, on cross-examination further testified that:

"We talk about shopping centers as well as specialized strip commercial areas. I think we have a strip commercial area of free-standing uses along M-21, Chicago Drive, and we have an identifiable shopping center in terms of the Meijers Thrifty Acres complex [where applicant's branch was proposed], and those uses adjacent to this, right around this intersection. I think there are both of the kind that we talk about present at this location.

"*Q.* And are you saying that together, collectively, they are intended to serve this community; they complement each other?

"*A.* Right, they complement each other in that one serves this free-standing function, the other one is more the integrated shopping center type of development."

Applicant's witness Bajema, a sociologist, said that the Jenison area, since it has no legal entity in the sense of an incorporated area, is referred to by some as the area covered by the post office while others would consider it as the area covered by the Jenison public school system.

It might be noted that proofs showed both the outline of the post office area and the public school

area as much larger than the area submitted by applicant as its "village".

Applicant's attorney during cross-examination of witness Rusk, a research director for a Detroit bank, argued that the witness presented by applicant was unable to define the primary service area of Union Bank. The witness in answer to a cross-examination question as to the service area of objector Union Bank said:

"I would say it would have to encompass a broader area, a—in the secondary area, we have three branch offices. This is where we're going to generate our deposits from, a total area. We have a primary and a secondary service area. All three banks, four banks, are included in that secondary service area, so they're all drawing from that same area.

"*Q.* In other words, it's your testimony that the Union Bank located right here is drawing from the same service area that is the primary service area of the applicant bank?

"*A.* That's true."

Applicant's Dr. Lanzillotti, evidently well known nationally as an author and expert on branch banking, said that if applicant were permitted to establish a branch at its proposed location, it would compete with other banks in the area for the same customers.

He further said:

"I would have said that their [Union Bank] primary service area would probably have been the area immediately to the south of the proposed location and probably east, because that is the area where you had the developed population, and not to the west. As of today, they are servicing this area, of this I am confident, but I would make the distinction between the primary service area as of the time of application and the areas that they are now serving."

The Commissioner of the Financial Institutions Bureau in his finding of facts found that west of the shopping center in which applicant was to locate residential development is in evidence. He noted that because the Jenison area was unincorporated its residents looked to the township for community services. He also noted that a school district incorporates an area much in excess of that delineated by applicant in the development of its village concept.

In his conclusions of law, the commissioner cited *Wyandotte Savings Bank v State Banking Commissioner,* 347 Mich 33 (1956), and *Bank of Dearborn v State Banking Commissioner,* 365 Mich 567 (1962), for construction of the term "village", correctly quoting *Wyandotte Savings Bank, supra,* in defining an unincorporated village as:

"an assembly or community of people, a nucleus or cluster for residential and business purposes, a collective body of inhabitants gathering together in one group."

He further correctly quotes *Bank of Dearborn, supra,* in defining "village" as:

"a settlement, a centralized populace area having a general common residential and business activity serving the particular area or district. It does not have to be a separate political entity or corporation. It is a 'locality' or 'area to be served'. It has been analyzed as a 'trading area' distinct from that assigned to 'municipality'."

The commissioner found that the facts in the instant case placed the matter between the factual and legal considerations applied in the *Dearborn* case, *supra,* and *American Bank & Trust Co v*

*Saxon,* 373 F2d 283 (CA 6, 1967), a case in which the Federal Court found that an applicant's proposal would split the village of Holt down the middle. The hearing commissioner concludes that the record supports the finding of a "village" as that statutory term has been defined by the courts.

I cannot conclude that the commissioner applied the proper law in making his findings of law. Though the 1969 Banking Code has not been previously applied, the statutory language applicable in this case is identical to language already interpreted by the courts which was contained in the preceding statute, the Financial Institutions Act.

In the *Bank of Dearborn* case, *supra,* p 572, the Supreme Court dealt with a case where both branch banks were at major intersections. The Court said that "economic rather than governmental, or geographical or physical boundaries are the controlling factor" in determining whether an area constitutes a village. The Court concluded that each branch constituted a separate trading area and each had its own potential for growth.

Nowhere does the commissioner apply the rule required by the *Bank of Dearborn* case, *supra,* in determining whether the "villages" of the applicant and objecting banks were the same "villages". In his findings of facts, he deals solely with the area that applicant delineated in its amended application. Objectors submitted much testimony relative to "villages" as served by Union Bank and to be served by Old Kent Bank, whose application had been previously approved by the Financial Institutions Bureau.

As indicated in Const 1963, art 6, § 28, the "review [by the courts] shall include, as a minimum, the determination whether such final deci-

sions, findings, rulings and orders are authorized by law".

Review of administrative-agency actions is not the "clearly erroneous" test applied to review of lower-court decisions, *Diepenhorst v General Electric Co,* 29 Mich App 651 (1971), but rather whether an agency has abused its discretion by arbitrary action. *Caddell v Ecorse Board of Education,* 17 Mich App 632 (1969). However, both cases dealt with the next clause of the constitutional provision relating to whether the decisions, findings, rulings, and orders are supported, if a hearing is required, by "competent, material and substantial evidence on the whole record".

I do not believe the "competent, material, and substantial evidence" cases are applicable in this case, because the administrative agency has not been authorized by law to determine whether a "village" exists without specifically determining if other branches are in operation in "villages" which in any way surround or infringe upon the "village" proposed by an applicant desiring to establish a branch bank.

No matter how much professors of banking may testify that competition in banking is good for the customers, the Legislature has said that "[no other] state or national bank or branch thereof" may be in operation in the same "village" where an applicant seeks to open a branch.

Though counsel briefed the questions of sufficiency of capital and surplus of applicant bank and the prospects of successful operation of a branch if established, I deem the question of finding of "village" to be controlling.

I would affirm the judgment of the circuit court reversing the decision of the Financial Institutions Bureau hearing commissioner.